|125  310|
|134  161|

|125   310|
|f40SC¹458|

## EUGENE L. SHAFER v. CAROLINE SENSEMAN, EXRX.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 13, 1889—Decided April 8, 1889.

[To be reported.]

1. Where a contract contains no words pertaining to an art or trade, is written in plain and popular language, and the facts and circumstances attending its execution and delivery are wholly undisputed, the interpretation thereof is for the court, and not for the jury.

2. The object of interpretation and construction, if there be any uncertainty as to the meaning of a contract, is to find the intention of the parties. If the contract is clear and unambiguous there is no room for construction, and, in the absence of fraud, accident or mistake, the parties are bound according to the plain words of the contract.

3. Where a bond provided that the obligor would pay the obligee $3,000, under conditions specified, six months after the obligee "loses his situation," a voluntary resignation of his situation by the obligee, to take another which he preferred in order to escape disagreeable associations for himself and wife, was not a loss of his situation within the meaning of the bond.

4. A contract which provides for the payment of money upon the happening of an event therein specified, provided such event happens, "previous to the date of the second marriage" of the obligor, is not a contract in restraint of marriage.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM, and MITCHELL, JJ.

No. 175 January Term, 1889, Sup. Ct.; court below, No. 5 August Term 1888, C. P.

On June 12, 1888, Eugene L. Shafer brought an action of assumpsit against Caroline Senseman, executrix of Comenius Senseman, deceased, upon the following instrument:

"NAZARETH, March 29, 1875.

"Six months after the date when Eugene L. Shafer loses his situation as teacher at Nazareth Hall, I promise to pay to said Eugene L. Shafer the sum of three thousand dollars without defalcation for value received. Provided that the said Eugene L. Shafer loses said situation at any time after the date of this note and previous to the date of my second marriage. In the event of the decease of my daughter Jennie Shafer, before the said Eugene L. Shafer loses said situation this note shall be null and void. Witness my hand and seal.

Witness present,                                    C. SENSEMAN.  [L. S.]

SOLOMON SHAFER."

At the trial on December 3, 1888, the plaintiff's evidence showed the following facts: Shafer was the son-in-law of Senseman, and his wife, Jennie Shafer, was Senseman's only child. When the instrument was given, Shafer and his wife were living with her father at Nazareth, Shafer being a teacher at Nazareth Hall. Anticipating a second marriage by his father-in-law, which would be disagreeable to plaintiff and his wife, the former procured the appointment of superintendent of the Moravian schools at Bethlehem, at a salary of $1,200, and house rent. Senseman wished the plaintiff and his wife to remain with him, and upon being advised of the plaintiff's appointment executed the instrument in suit, whereupon the plaintiff, on April 6, 1875, declined the Bethlehem appointment and retained his old position.

On July 11, 1876, Senseman was married, however, and at the end of the summer term, June 29, 1876, the plaintiff, anticipating the marriage, resigned his position at Nazareth and took a position as teacher at the Moravian school, Bethlehem, at a salary of $900. Plaintiff claimed that the pressure of Senseman's impending marriage, which was exceedingly distasteful

to his wife and to himself, compelled him to resign his situation at Nazareth. He therefore contended that he had proved the conditions upon which the payment of the obligation depended, to wit: (1) He lost his situation at Nazareth after the date of the instrument; (2) He lost it prior to the second marriage of Senseman; (3) His wife, Jennie Shafer, was living at the time of the trial.

Plaintiff also called witnesses who testified to declarations of Senseman (who had died in December, 1887), after the instrument was executed, that he had given it in consideration of the plaintiff's declining the position at Bethlehem and with his wife remaining at Nazareth.

At the close of the plaintiff's testimony, the defendant moved for a compulsory nonsuit, upon the grounds that there was no proof that the plaintiff had lost his situation as teacher at Nazareth Hall, and that the contract was void, because in restraint of marriage.

Upon this motion, the court, REEDER, J., delivered the following opinion:

This is a suit upon a contract brought by the plaintiff in this action, against the executrix of Comenius Senseman, deceased. The decedent executed the note in suit upon which the plaintiff seeks to recover. He agrees by this obligation to pay the plaintiff, Eugene Shafer, the sum of three thousand dollars, six months after the said Eugene Shafer loses his situation as teacher at Nazareth Hall, provided he loses his situation previous to the date of his (Senseman's) second marriage.

The testimony in the cause is that of the plaintiff's witnesses. It establishes the fact that prior to the date of the second marriage of Comenius Senseman, Eugene Shafer voluntarily withdrew from his connection as a teacher at Nazareth Hall. He claims in this proceeding that such withdrawal under the circumstances was the contingency contemplated by the condition in the note upon which depended the payment of the three thousand dollars. Whether this is so or not depends upon the construction, by the court, of the words, "loses his situation as a teacher at Nazareth Hall." It, therefore, in any event would not be a subject for your consideration, but a question of law for the interpretation and determination by the court.

Arguments.

I am satisfied, at this stage of the proceeding, that the voluntary withdrawal of Eugene Shafer, as a teacher, from Nazareth Hall, was not the condition that all the parties intended to express by the words used in this note, that is, so far as we can derive their manifest intent from the written letter of the contract. A man loses his situation by his involuntary act: No person loses a place which he withdraws from on his own motion. Where he is forced by circumstances beyond his control to withdraw from the situation, either by the action of the authorities controlling it, or his health is in such condition that his life is endangered, or where his health is imperiled by his continuance in the position, it is not a voluntary withdrawal, but it would be a loss of his situation such as is within the letter of this contract.

The evidence in this case discloses no such state of facts. It shows that Eugene Shafer, because of his dissatisfaction with his father-in-law's second marriage withdrew voluntarily from his position as a teacher in Nazareth Hall. That was not the event contemplated by this contract upon the happening of which the payment of money became due. I therefore propose to make this motion for the entry of a compulsory nonsuit absolute, and will discharge you from the further consideration of the case.

A compulsory nonsuit having been entered, and a motion to take it off refused, the plaintiff took this writ, assigning for error, the entry of the nonsuit and the refusal to take it off.

*Mr. Henry W. Scott* (with him *Mr. W. D. Luckenbach*), for the plaintiff in error :

1. If the construction of the contract is to be made by the court, upon the written paper alone, the condition of his "losing his situation" is to be construed favorably to the plaintiff, and against the maker: Broom's Leg. Max., *573–4; Shep. Touch., 83; Edis v. Bury, 6 B. & C. 433; Black v. Bell, 1 M. & Rob. 149; Lloyd v. Oliver, 18 Q. B. 471 : Forbes v. Marshall, 11 Exch. 166; White v. Smith, 33 Pa. 186; Cox v. Freedley, 33 Pa. 130; Connery v. Brooke, 73 Pa. 80; 2 Parsons on Cont., 499–501; Allentown Sch. D. v. Derr, 115 Pa. 446; Williamson v. McClure, 37 Pa. 408.

2. The word "lose" is susceptible of different meanings: Webster; Stormouth. Moreover, the written contract assumes that Mr. Shafer will lose his situation, and that Mr. Senseman would contract a second marriage. These two conditions are being contracted for, and the provisions of the whole paper must be construed together. The former is dependent upon the latter, by express words. The parties were contracting for their own acts—not of third parties, and could not have intended the contractual relation to exist only upon future contingencies, months afterwards, entirely within the control of others, and not of themselves. If the maker had intended this, he would or could have used the word "discharge." It was his own contract.

3. Considered with reference to the testimony submitted by the plaintiff, to apply the language of the contract to its subject matter as an aid in its interpretation, the question ought to have been submitted to the jury. Such testimony is always competent: Centenary Church v. Clime, 116 Pa. 146; B & P. Steamboat Co. v. Brown, 54 Pa. 81; Lacy v. Green, 84 Pa. 518; Bertsch v. Lehigh C. & Nav. Co., 4 R. 130; 2 Parsons on Cont., 499; Connery v. Brooke, 73 Pa. 84; Maynes v. Atwater, 88 Pa. 497. The testimony, which was excluded, should have been submitted to the jury, in order to have them construe the contract in suit in the light of the testimony.

4. The principle of law which we invoke, is, that where a term or word occurs in a written instrument, which makes the meaning of that instrument doubtful or ambiguous, "the contemporaneous acts and declarations" of the parties to the instrument may be given in evidence, to show the meaning which they intended should attach to those ambiguous terms or words used in the written instrument: Williamson v. McClure, 37 Pa. 408; Paxson's Appeal, 106 Pa. 436; Caley v. Railroad Co., 80 Pa. 363; Commercial Bank of Cincinnati v. Pleasants, 6 Wh. 375.

*Mr. Edward J. Fox, Jr.,* and *Mr. Edward J. Fox,* for the defendants in error:

The words "loses his situation," are neither words of art nor phrases of commerce, nor was it necessary to ascertain the

surrounding circumstances to discover their proper construction. There was no ambiguity as to the meaning of the phrase. It is one of common parlance, heard every day and capable of interpretation without any extrinsic evidence of any character. It was the duty of the court to construe this phrase in the plain, ordinary and popular sense. Such a construction would defeat the plaintiff's claim, as the condition contemplated by the terms of the contract, viz., the losing of the situation, had never happened: 2 Parsons on Cont., 4; Taylor v. Briggs, 2 C. & P. 525; Smith v. Wilson, 3 B. & A. 728; Bold v. Rayner, 1 M. & W. 343; Boorman v. Jenkins, 12 Wend. 563 (27 Amer. D. 158); Centenary Church v. Clime, 116 Pa. 146; Robertson v. French, 4 East 135; Thorne v. Warfflein, 100 Pa. 519.

OPINION, MR. JUSTICE CLARK:

It is conceded that at the date of the obligation in suit, Eugene L. Shafer was a teacher in the Moravian school at Nazareth, known as Nazareth Hall, of which Rev. Eugene Leibert was the principal. Shafer's wife was a daughter of Comenius Senseman, the obligor, who was at the time a widower, and had in contemplation a second marriage with a certain Mrs. Knauss. Mrs. Shafer, with her husband, lived at home with her father. The effusive character of the courtship, and the contemplated marriage of the father were exceedingly distasteful to Mr. and Mrs. Shafer, and, on that account, they were making arrangements to remove from Nazareth to Bethlehem, where Shafer had succeeded in being elected the superintendent of the Moravian parochial schools. It was at this particular juncture in the affairs of the family, on March 29, 1875, the obligation in suit was given, in the form following:

NAZARETH, March 29, 1875.

Six months after the date when Eugene L. Shafer loses his situation as teacher at Nazareth Hall, I promise to pay to said Eugene L. Shafer the sum of three thousand dollars, without defalcation for value received. Provided that the said Eugene L. Shafer loses said situation at any time after the date of this note and previous to the date of my second marriage. In the event of the decease of my daughter, Jennie Shafer, before the

said Eugene L. Shafer loses said situation this note shall be null and void. Witness my hand and seal.

Witness present,                                      C. SENSEMAN. [L. S.]

    SOLOMON SHAFER.

On June 29, 1876, Shafer resigned his situation at Nazareth Hall, where he was receiving $800 per year, and accepted a position at Bethlehem, at a salary of $900; and on July 11th following, Senseman was re-married. In the month of December, 1887, Senseman died, and on June 12, 1888, Shafer brought this suit to recover the amount specified in the bond, claiming that, by his resignation under the circumstances, he lost his situation at Nazareth Hall, within the meaning and according to the conditions of the bond. The obligation is certainly unique and original in its provisions, but it contains no words pertaining to art or trade, being written in plain and popular language; and, as the facts and circumstances attending its execution and delivery are wholly undisputed, we can see no force in the suggestion that the interpretation was for the jury. The case turns upon the true and proper construction of the obligation in suit, taken as a whole, in the light of the admitted facts and circumstances under which it was executed. The construction in such case is a question of law with which the jury has nothing to do.

The object of interpretation and construction is, if there be any uncertainty as to the meaning of a contract, to find the intention of the parties. If the contract is clear and unambiguous there is no room for construction. The parties, in the absence of fraud, accident or mistake, are bound according to the plain words of the contract.

It is contended, however, on the part of the plaintiff in error that in the expression "loses his situation," etc., the word "loses" is capable of a variety of shades of meaning; that whether Shafer abandoned the situation voluntarily or involuntarily, he may, in some sense of the word, be said to have lost it. But on a careful study of the various definitions of the word, as found in Webster's Unabridged dictionary, it will be found that every use of the word implies an inability to retain, or to recover, or an involuntary deprivation of, the thing which is said to be lost. In the ordinary and common sense of the word, no man can be said to have lost a situation, which he, of

his own motion and without any reasonably compelling cause, resigns, and the duties of which, of his own free will, he refuses longer to discharge. Mr. Shafer might have lost his situation, perhaps, from sickness or personal injury, by the failure of the principal to re-appoint him, or by his discharge to make way for another, or by the insolvency of his employer, or the destruction of the buildings by fire; but he certainly did not *lose* his situation when he voluntarily resigned and abandoned it to take another, which, under the circumstances, he preferred.

If, however, we take into consideration the entire instrument, and read it as a whole, in the light of the subject matter, taking into view also the situation of the parties, and the circumstances under which the bond was executed, as to which there is no dispute, the manifest purpose of the parties will be found to be in accordance with the plain expression and meaning of the paper.

Comenius Senseman, as we have said, was a widower; his daughter was his only child, and she and her husband lived with him. They were dissatisfied with Senseman's courtship of Mrs. Knauss and with the prospect of his re-marriage, and were about to leave the father's home and remove to Bethlehem. Shafer, however, was induced to decline the superintendency at Bethlehem, and in consideration thereof Senseman executed the bond, as an indemnity in a fixed sum to Shafer against the loss of his situation at Nazareth from any cause whatever. The inducement to Senseman undoubtedly was that he might enjoy the society, and have the assistance of his daughter and her husband in his own house, until such time as he might contract a new marriage, when the purpose of having his daughter with him would be supplied by his wife; hence it is provided that the three thousand dollars was not to be paid unless the situation at Nazareth Hall was lost in the lifetime of Shafer's wife, and before his re-marriage. We take it that the paper means just what it says, and the parties should be bound accordingly. There is no allegation of fraud or mistake, and there is no occasion therefore for the introduction of parol evidence to the effect that it was intended to mean something else. Senseman wrote the bond himself: it is certainly written largely in his own interest; it was just such an arrangement as it suited

Opinion of the Court.

him to make : the meaning and purpose of the paper is simple and obvious, and we are not at liberty to add to, alter or amend it, so as to change the rights and responsibilities of the parties under it.

It is perfectly plain that Senseman did not bind himself in this bond not to re-marry, or fix the amount of the bond as a penalty, in the event of his re-marriage. If he so agreed and gave any paper to Shafer to that effect, as it is intimated in the testimony he did, it has not been exhibited in this case. On the contrary, it seems clear that a re-marriage was in contemplation, for the occurrence of that event is expressly referred to, and the effect of it upon the bond in suit provided for. The express provision of the bond is that its obligation shall cease and determine at the re-marriage of Senseman, if the event upon which the bond was payable did not before that time occur. How such a bond could be supposed to operate in restraint of marriage it is difficult to see : for without notice to Shafer, and before his resignation or discharge, the decedent had it in his power, by re-marriage, to render the bond of no effect. It is highly improbable, perhaps, that a man might be so influenced, excepting under circumstances otherwise highly favoring the project, but it is sufficient for our present purpose that the existence of the bond was an inducement to, rather than a restraint upon, marriage.

The contract does not assume either that Shafer will certainly lose his situation, or that Senseman will contract a second marriage. The obligation of the bond is not absolute, it is conditional ; it is contingent upon Shafer's loss of the situation at Nazareth Hall in the lifetime of his wife, and before Senseman's re-marriage, and there is nothing in the bond to indicate that the happening of the latter event is to establish the former.

Notwithstanding the zeal and ability exhibited by the counsel for plaintiff in error in the preparation and argument of this case, we are unable to read this bond otherwise than according to its plain letter, and reading it just as it is written, the plaintiff has no case.

Judgment affirmed.