A. PALMER ET AL. v. H. FARRELL ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADEL-
PHIA COUNTY.

Argued March 25, 1889—Decided November 12, 1889.
[To be reported.]

1. When the bank of a navigable stream is called for as a boundary,—
that and no more,—the law will presume the grantor's intention to have
been to carry the line to low-water mark ; and if the words of the grant
are clear and consistent and without ambiguity, the intention of the
parties cannot be shown, to overcome their obvious meaning.
2. If, however, there be anything in the words of the grant which would
indicate a probably different intent, the question, in the absence of fraud
or mistake, is one of construction for the court; or, if there be extra-
neous facts or circumstances which would bear upon the proper construc-
tion, the question may, under proper directions, become one for the jury.
(a) A deed conveying land " bounded and described according to " a cer-
tain survey, did not call for a navigable river as a boundary, but for a
line run between certain points designated by the surveyor as on the
bank of the river, and the lines of the survey excluded the flats between
high- and low-water marks :
3. In such case, parol evidence was admissible that the bank referred to
was artificial, in the nature of a dike ; that the grantee had notice that
the grantors reserved the flats, and refused to execute a deed expressly
conveying them ; that the sale of the land conveyed was made expressly
subject to the survey which was afterwards made, and that the deed
was made in accordance with the survey.
4. In an action of ejectment for the flats, the plaintiffs claiming under
the grantors, and the defendants under the grantee in such deed, who is
living, if the " subject in controversy " is the true force and effect of the
deed, one of the grantors, being without interest, is a competent wit-
ness to testify to such extraneous facts and circumstances, although the
other grantors are dead: § 5, clause (e), act of May 23, 1887, P. L.
158.*

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and
MITCHELL, JJ.

No. 296 January Term 1888, Sup. Ct.; court below, No.
110 June Term 1885, C. P. No. 3.

* See Duffield v. Hue, ante, 94.

On May 12, 1885, Lydia P. Palmer, and by subsequent substitution, Alfred Palmer in her stead, William H. Force, Jr., and Hannah Force, his wife, formerly Hannah Palmer, in right of said wife, brought ejectment against Hamilton Farrell and Ann F. Farrell, his wife, in right of said wife, to recover about 26 acres of land in the 27th (formerly the 24th) ward, Philadelphia; the land lying on the west side of the Schuylkill, about opposite Point Breeze, and about four miles from Independence Hall.* Issue.

The writ was not printed, but the land was described in the plaintiff's paper book as being " bounded on the north by a line run upon the artificial river bank, on the south by low-water mark, and on the east and west by the projection to low-water mark of the side lines of the ten-acre meadow lot, in front of which it lies."

At the trial on November 19, 1885, it was made to appear that the common source of title was Aaron Palmer, to whom on September 17, 1791, Nathan Jones conveyed the ten-acre meadow lot, with the appurtenances. Aaron Palmer died in 1817, leaving a will whereby, inter alia, he devised the ten-acre lot to his widow and daughter Eliza for life, remainder to his daughters Hannah Jones and Mary Palmer, share and share alike, in fee.

The land in controversy, being what is commonly called the flats, or the mud flats, was not expressly mentioned or described in said deed or will, but it was admitted that both the meadow land and flats had been in the tenure and possession of Aaron Palmer and his successors in title from 1791 to May 13, 1864.

The widow of Aaron Palmer died in 1832, and the daughter Eliza, in January, 1864; whereupon the possession of the meadow land, with the outlying flats, passed to Mary Palmer and Lydia P. Palmer, the latter being the daughter and sole heir of Hannah Jones then deceased.

By deed dated May 13, 1864, Charles Palmer and Lydia P., his wife, and John G. Palmer and Mary, his wife, conveyed the ten-acre meadow lot to Hamilton Farrell, one of the defendants, in fee, the deed containing the following description:

---

* See Jones v. Bland, 112 Pa. 176, 181.

"Bounded and described according to a survey made thereof by James Miller on the 26th day of April, A. D. 1864, as follows, to wit: Beginning at a point on the bank of the river Schuylkill, at the corner of ground of Joseph Gibson; thence along the same and the middle of Upper Two creek N. 5° 17′ E., 16.47 perches to a point in the middle of said creek; thence N. 21° 25′ E., 3.91 perches to a point in the middle of said creek; thence N. 38° 42′ E., 21.41 perches to a point in the middle of said creek, thence S. 87° 27′ E., 21.59 perches to a point in the middle of said creek; thence N. 55° 10′ E., 4.25 perches to a point in the middle of ditch running between this lot and other ground of the said Hamilton Farrell; thence S. 81° 57′ E., 2.25 perches to a point in the middle of said ditch; thence S. 40° 20′ E., 39.92 perches to a point on the bank of the said river Schuylkill; thence S. 85° 45′ W., 59.47 perches to a point on said bank, and thence S. 76° 58′ W., 9.82 perches to the place of beginning, containing ten acres and sixty-two perches of land more or less."

According to the abstracts, Alfred Palmer claimed the undivided one half interest in the flats, the land in dispute, under a deed therefor from his mother, Lydia P. Palmer, dated January 7, 1887. The other plaintiff, Hannah Force, claimed the other undivided one half interest,—one eighth thereof as one of the children and heirs at law of Mary Palmer, who with John G. Palmer, her husband, died in 1878, and as grantee by deed dated May 11, 1885, of the undivided three eighths interest of the other children. The defendant, Ann F. Farrell, claimed the premises under and by virtue of the deed of May 13, 1864, as the grantee of her husband, Hamilton Farrell, through the medium of Robert Paschall, trustee, by deeds both dated April 14, 1885.

The plaintiffs having read in evidence the deeds referred to, dated May 13, 1864, and April 14, 1885, called Lydia P. Palmer, and said:

We propose to prove by this witness that the defendants entered into possession of the premises in controversy under claim of title through the said deed John G. Palmer et al. to Hamilton Farrell, dated May 13, 1864, but that in reality defendants' possession under said deed was an intrusion.

Witness objected to by counsel for the defendants, because she was one of the grantors in said deed of 1864, and that all the other grantors were dead and therefore, under the law, incompetent.

Counsel for the plaintiffs admitted the facts so averred by the counsel for the defendants, and stated that the witness had conveyed all her right, title and interest in the premises in controversy to Alfred Palmer, one of the plaintiffs, by deed containing no covenant but that of special warranty, dated January 8, 1887, and produced the deed.

By the court: Objection sustained, offer refused; exception.[1]

Then, after having put in evidence the deed from Nathan Jones to Aaron Palmer dated September 17, 1791, and the other facts heretofore given relating to the tenure and possession of Aaron Palmer and his successors in title from the date of that deed to May 13, 1864, and the character of the land in controversy as lying between high- and low-water mark immediately in front of the ten-acre meadow lot, called Henry Palmer and offered to prove by him:

That the grantors in the deed of May 13, 1864, made known to the grantee, Hamilton Farrell, before the sale to him, their intention to reserve the flats in controversy; that they refused to sign a deed which, by its express terms, conveyed their title to low-water mark, and that the deed was re-drawn and the lines drawn upon the bank in order to meet that objection; that the first deed was drawn by Mr. Farrell's attorney and conveyancer to whom the grantors made known their objection; that the second deed was drawn by the same attorney and conveyancer, and that the second deed is the deed under which defendants claim their title to the flats in controversy; and also that the land described in the deed of 1864 was sold at public auction to Hamilton Farrell, by the acre, subject to a survey which was afterwards made.

Counsel for the defendants objected to the foregoing offer, on the ground that it was an attempt to contradict the deed of the Palmers to Farrell, dated May 13, 1864, already offered in evidence by plaintiffs, which passed the title to the flats in controversy.

By the court: Objection sustained, offer refused; exception.[2] The plaintiffs then rested.

On motion of defendants, the court, FINLETTER, P. J., entered a judgment of compulsory nonsuit, with leave, etc.

Subsequently, a motion to take off the nonsuit, with reasons, was filed, and rule granted. On January 21, 1888, the rule granted was discharged, without opinion filed, when the plaintiffs took this writ, assigning for error:

1, 2. The refusal of plaintiffs' offers.[1 2]

3. The order directing judgment of nonsuit.

4. The refusal to vacate said judgment.

*Mr. Dwight M. Lowrey* (with him *Mr. A. U. Bannard*), for the plaintiffs in error:

1. Flats lying between high- and low-water mark, which ordinarily pass by a deed of the abutting fast land, pass as a parcel thereof, and not as an appurtenance. Such flats, though not included within the lines of the deed, ordinarily pass by virtue of a presumed intention on the part of the grantor. But such deed may in truth have been made pursuant to a contra-

ry intention: parol evidence of this fact is admissible to rebut said presumption and to confine the operation of the deed to the lines strictly expressed: Codman v. Winslow, 10 Mass. 149; Risdon v. Philadelphia, 18 W. N. 73; Marquis of Salisbury v. Railway Co., 5 C. B. (N. S.) 174; Stanley v. Green, 12 Cal. 162; Putnam v. Bond, 100 Mass. 58; Waterman v. Johnson, 13 Pick. 263. The flats pass, if at all, by presumption, and not by description: Jones v. Janney, 8 W. & S. 443; Paul v. Carver, 26 Pa. 223; Knight v. Wilder, 2 Cush. 199.

2. Extraneous evidence is always necessary and admissible to locate the descriptive boundary of the deed, irrespective of uncertainty. It not only resolves ambiguity and doubt, but may even control the plainly indicated boundary of the deed, in order to give effect to the manifest intent. Plaintiffs' evidence materializes the exact description of the deed, and contradicts only the extraneous presumption: Burkholder v. Markley, 98 Pa. 37; Blasdell v. Bissell, 6 Pa. 259; Welles v. Yates, 44 N. Y. 525; Brown v. Willey, 42 Pa. 209; Naglee v. Ingersoll, 7 Pa. 185; Gratz v. Beates, 45 Pa. 504; Abbott v. Abbott, 51 Me. 581; Opdyke v. Stevens, 3 Dutch. 88; Caldwell v. Fulton, 31 Pa. 489.

3. Lydia P. Palmer was competent within the exception to clause (e), § 5, act of May 23, 1887, P. L. 158; Ash v. Guie, 97 Pa. 493; Hill v. Truby, 117 Pa. 320; Adams v. Bleakley, 117 Pa. 283.. She was not interested, except for costs, and this did not incapacitate her. The act of 1887, though repealing all prior acts on the subjects therein treated, is intended simply as a compilation or codification of the same, in the light of the intervening decisions.

*Mr. Charles H. Downing*, for the defendants in error:

1. By a conveyance of the meadow running to the bank, which bank was the high-water mark, the flats and everything to low-water mark would pass also: Jones v. Janney, 8 W. & S. 439; Coovert v. O'Conner, 8 W. 470; Ball v. Slack, 2 Wh. 508; Patterson v. Harlan, 124 Pa. 67.

2. Under the act of May 23, 1887, Lydia Palmer could not be called as a witness. Hamilton Farrell was clearly incompetent, and why should one of the plaintiffs be permitted to testify? The deed of January 8, 1887, was executed merely

for the purpose of making Lydia Palmer competent, and as that fact is apparent she is clearly incompetent: Ewing v. Ewing, 96 Pa. 381.

3. The recital in the deed from the heirs of Aaron Palmer to Farrell, conveying all the interest, right and title which Aaron Palmer had by his deed from Nathan Jones, is conclusive that they had conveyed all the land in which they had any interest, and as they could not contradict said deed, they are governed by the recitals, and therefore no right of action accrued: Stoever v. Whitman, 6 Binn. 416; Reigart v. Ehler, 1 Wh. 18; James v. Letzler, 8 W. & S. 192; Schuylkill etc. Imp. Co. v. McCreary, 58 Pa. 304.

OPINION, MR. JUSTICE CLARK:

This is an action of ejectment, brought to recover about 26 acres of land, situate on the west side of the Schuylkill, opposite Point Breeze, in the Twenty-seventh ward of the city of Philadelphia. The description contained in the writ is not printed, but, according to the plaintiffs' paper book, the disputed property is "flat land," bounded on the north by a line run upon the dike or artificial bank of the Schuylkill river, on the south by low-water mark, and on the east and west by the projection to low-water mark of the side lines of a ten acre meadow, or fast lands, of defendants, in front of which are the flats. These flats, being between high- and low-water mark, are covered with water, except when the tides are low, and are valuable only as accretions may make them so for the purpose of a wharf. As the court below entered a nonsuit, we are bound to accept the testimony which was taken as true, treat the offers of evidence which were refused as if they were justified by the proof, and give to the plaintiffs the benefit of all the inferences which may fairly arise out of the facts thus assumed.

The common source of title was Aaron Palmer, to whom, on September 17, 1791, one Nathan Jones, by a deed, conveyed the meadow ground to which the flats were appurtenant. Aaron Palmer died November 11, 1817, and was seised of the property at the time of his death; for it was admitted at the trial that Aaron Palmer, or his heirs, claiming under him, was in the actual possession from the date of this deed until May 13, 1864, the date of the defendants' deed from Lydia P. Palmer.

It is conceded that by this means Aaron Palmer was invested with title, not only to the fast land, but also to the flat lands, upon the principle that a grant of land bounded upon a navigable river extends to low-water mark, subject, however, to the right of the public for the purpose of navigation: Carson v. Blazer, 2 Binn. 475; Ball v. Slack, 2 Wh. 508; Coovert v. O'Conner, 8 W. 470; Jones v. Janney, 8 W. & S. 439; Fulmer v. Williams, 122 Pa. 191. The authorities upon this subject are collected in Wood v. Appal, 63 Pa. 210, and the law may be regarded as settled beyond question. "Between high- and low-water mark upon a navigable river, the grantee takes subject to the rights of the public; and, as between him and the public, he may use his land below high-water mark for such purposes as do not interfere with the free flow and navigation of the waters:" Fulmer v. Williams, supra. The possession of the fast land is, therefore, possession of the flats. That boats or vessels at high water pass over the flats amounts to nothing, as respects the possession; for the possession is necessarily subject to the use of the water by the public: Ball v. Slack, supra.

The plaintiffs' claim is through a series of assignments from those entitled by devolution under the last will and testament of Aaron Palmer, deceased. The defendants claim under the deed of May 13, 1864, from persons entitled in the same right; and the whole question turns upon the proper force and effect of that deed. Did the conveyance from Lydia P. Palmer et al. to Hamilton Farrell for the fast lands pass the title to the flats also? The general rule, undoubtedly, is as we have stated it; but there are cases in which the intention of the parties may be otherwise, and it is a cardinal rule in all cases that a grant is to be construed according to that intention. "The character of this kind of property is such that land bordering on the flats, and the flats, naturally go together. Their most beneficial enjoyment is derived from their connection; and it is inconceivable that any man, in his sober senses, having, or supposing he had, a title to both, would intentionally separate them, and convey the meadow to one of his children and the flats in front of it to another. For this reason it is that an express exception is required in the grant, or some unequivocal declaration, or certain immemorial usage, to limit the title of the owner in

such cases to the edge of the river:" Jones v. Janney, supra. It is therefore this peculiar connection in their uses which gives rise to the presumption that the grant is intended to pass the flats with the fast land; but this presumption of fact may, like any other, be rebutted by proper and competent evidence of a contrary intention. "Of course," says Mr. Justice AG-NEW, in Wood v. Appal, supra, "the rule, as now laid down, applies only to a case where no other intention is disclosed by the return of the survey or the deed." The very recent case of Risdon v. Philadelphia, 18 W. N. 73, illustrates the rule applicable in such a case with much clearness. In that case, Carson held title through a patent from the Duke of York, granted in 1667 to Andrew Carr, for "land lying and being in Delaware river, nearly into Lawsa Cocks, containing, by estimation, one hundred acres or thereabouts, be it more or less, bounded on the south with the said river, on the north with the woods, and on the north east with Pennebeckahs creek, or kills." Notwithstanding this patent plainly included the flats, Carr, in 1838, procured from the surveyor general a separate patent for the flats, and, in a future conveyance of the fast lands, followed, apparently as a dividing line, the courses and distances of the patent of 1838, and on one of these lines called for the flats. "These and other matters of description in the deed," says our Brother STERRETT, who delivered the opinion of the Court, "taken in connection with the fact that Carson evidently claimed to hold the flat land by virtue of his patent from the commonwealth, would seem to indicate that it was the intention to exclude, rather than include, these lands in the conveyance to Ryan. At all events, it was not a question which the Court, under the evidence, could decide as matter of law. It is unnecessary to say that Carson did or did not acquire anything by his patent of 1838. He evidently treated it as valid, and this fact, in connection with others, should not be ignored in determining whether the flats and margins in front of the fast lands were included in the conveyance to Ryan."

It is apparent, therefore, that the question in each case is determinable upon the true and proper construction of the grant. When the bank of a navigable stream is called for as a boundary,—that and no more,—the law will presume the

grantor's intention to have been to carry the line to low-water mark; and when the words of a grant are clear and consistent, when they contain no ambiguity, and no fraud or mistake is alleged, the intention of the parties cannot be shown, to override their obvious meaning; but, if there is anything in the words of the grant which would indicate a probably different intent, the question, in the absence of mistake or fraud, is one for construction of the court; or, if there be extraneous facts or surrounding circumstances alleged which would, if established, bear upon the proper construction, the question may, under proper instructions, become one for the jury. Is there anything upon the face of the deed dated May 13, 1864, from Lydia P. Palmer et al. to Hamilton Farrell, which calls for construction? It is clear that the flats are not embraced within the words of the description, as written in this deed. The lands are "bounded and described according to the survey made thereof by James Miller on the 26th day of April, A. D. 1864,"—only a few days before the execution of this deed. The lines of that survey are the lines given in the deed, and admittedly exclude the lands in dispute. It is plain, then, that it is only by a legal construction of the deed, based upon an assumed intention of the grantors, that the flat lands can be embraced in it; and, as the court is thus called upon to construe the deed, that work must be conducted according to established rules. The words of the grant are wholly consistent with the contention of the plaintiffs in error, that the flat lands were not embraced, and it is only by a legal construction that they may be otherwise understood. The description does not call for the river; it calls for a line run between certain points, designated by the surveyor as on the bank of the river. Under these circumstances, whatever the presumption might be, we think it was competent for the plaintiffs to prove, not their own declarations, perhaps, or even the parol admissions of Farrell, but the extrinsic facts and circumstances attending the transaction, viz., that this bank was an artificial one, in the nature of a dike, which was erected to rescue the meadow from inundation; that Farrell had notice before the sale that the plaintiffs reserved the flats; that the plaintiffs refused to execute a deed which by its express terms conveyed the flats; that the sale was expressly subject to a

survey which was afterwards made ; and that the lines in the deed were in exact accordance with that survey, the lines having been drawn upon the bank, in order to meet the objections then stated. These facts, taken with the particular description of the deed, would seem to indicate that it was the intention to exclude, rather than include, the flat lands in the making of the deed to Farrell. The force of these facts, if shown, would, of course, be for the jury; but the evidence, we think, should have been received, and submitted to their consideration.

Nor can we discover any good reason for excluding Lydia P. Palmer as a witness for the purpose stated. As the heir at law of Hannah Jones, she was originally entitled to the undivided one half of the property in dispute. She, with her husband, joined in the deed to Farrell, and, as the deed and the title to the lands in dispute, as affected thereby, constitute the thing or contract in action, she may well be said to have been a party thereto. The true force and effect of this deed is the "subject in controversy," and to that deed she was a party. It is equally true that the other grantors in the deed are dead, and their right thereto or therein has passed by their own act, or the act of the law, to the party on record who represents their interest. The witness was wholly without interest. She had, by a deed of conveyance, disposed of her entire right, and entered into no covenants against any outstanding title. She might ultimately, perhaps, be liable for part of the costs, but this, by § 4 of the act of 1887, was not ground for her incompetency. This, in view of the recognized policy of the statute to exclude the surviving party to the transaction, whether interested or not, is perhaps unimportant; but there are other considerations upon which the competency of the witness is to be determined. She was called, not against the interest of the parties deceased, but in support of that interest; and Farrell, the adverse party, was alive, and competent to testify upon the same matters. If the witness is within the provision of clause (e) at all, she comes clearly within the exception to that clause: "unless the proceeding is by or against the surviving or remaining partners, joint promisors, or joint promisees of such deceased or lunatic party, and the matter occurred between such surviving or remaining partners, joint promisors, or joint

promisees, and the other party on the record, or between such surviving or remaining partners, promisors, or promisees, and the person having an interest adverse to them; in which case any person may testify to such matters." The action is brought by two living parties, one of them representing the interest of Lydia P. Palmer, the surviving or remaining party to the deed, and the other representing the interest of Mary Palmer, who is dead. The assignees of Mary's interest cannot complain of inequality, as the witness was called in their behalf; and Farrell cannot complain, as he was also competent as to all "such matters" as the witness might embrace in her testimony.

> The judgment is reversed, and a venire facias de novo is awarded.