# E. M. McCullough v. The Hartford Fire Insurance Company, of Hartford, Conn., Appellant.

*Insurance—Renewal—Power of agent—Secret limitations.*

Where a policy of insurance provides for renewals, but is silent as to the forms of procedure necessary to effect such renewal, and a contract for such renewal has been executed by the agent of the company and a renewal receipt given, the company cannot set up as a defense thereto that the agent had exceeded the scope of his authority, the restrictions of which are described by secret instructions of which insured could have no notice.

*Insurance—Principal and agent—Powers of agents.*

The question always is, not what power an agent does in fact possess, but what power the company held him out to the public as possessing.

The powers of an agent are prima facie coextensive with the business intrusted to his care and will not be narrowed by limitations not communicated to the person with whom he deals.

*Insurance—Effect of renewal receipt—Evidence.*

While a renewal receipt purporting to renew an expired policy of insurance may not be sufficient to make a contract of insurance, it may be admitted and submitted to the jury as evidence of such contract, taken in connection with other testimony in the case.

Argued May 5, 1896. Appeal, No. 14, April T., 1896, by defendant, from judgment of C. P. Clarion Co., Aug. T., 1894, No. 228, on verdict for plaintiff. Refore RICE P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit on fire policy. Before CLARK, P. J. Verdict for plaintiff for $865.06.

The following facts were stated in the opinion of the Superior Court:

"Policy No. 1851 of the defendant company was issued by, and delivered through its local agent, A. S. Jones, at Clarion, Pa., to the plaintiff, insuring him against direct loss or damage by fire except as therein provided, to an amount not exceeding $800 on his stock of jewelry, etc., for the term of one year from the 19th day of November, 1892, at noon, to the 19th day of November, 1893, at noon, for the premium of $12.00. In the state-

234    McCULLOUGH v. INS. CO., Appellant.

Statement of Facts—Charge of Court.    [2 Supér. Ct.

ment filed the plaintiff claims, ' the said policy was renewed and continued for one year in consideration of the same rate of premium specified therein; and the sum of $5.00 lawful money of the United States, for the renewal of said policy, and in part payment of the premium for the renewed term, was paid by plaintiff to defendant on the 5th day of December, 1893, . . . . . The receipt whereof was, in a renewal receipt delivered to plaintiff by defendant, through its authorized and duly constituted agent, A. S. Jones, acknowledged.' The following is a copy of the renewal receipt :

" The Hartford Fire Insurance Company. Hartford, Connecticut. Incorporated 1810. Charter Perpetual. George L. Chase, President; P. C. Royce, Secretary; Chas. E. Chase, Assistant Secretary. Agency at Clarion, Pa., December 5, 1893. $5.00. Received of E. M. McCullough five dollars on account of eight hundred dollars insurance renewal of policy 1851. Five Dollars. (Signed) A. S. Jones."

It also appears from the record that the above receipt was admitted (8) and was made the subject of the defendant's third point: " The receipt in evidence is no contract of insurance," which was answered as follows :

" We will answer that in the affirmative with this qualification: We do not say that the receipt of itself is sufficient to make a contract of insurance, but we say it is evidence of a contract of insurance, taken in connection with the testimony of the plaintiff, and you will consider the receipt and that evidence together with all of the other evidence in the case." [7]

There was evidence which, although conflicting, tended to show, as the jury found that it did show, that a renewal of the insurance had been executed. The court charged the jury that if they believed the plaintiff's testimony the preponderance was with him. The defendant company contended that the alleged renewal contract between the plaintiff and the agent was tentative and executory, being dependent on further acts to be performed by the plaintiff.

The court charged the jury, inter alia as follows :

But the defendant contends that the alleged renewal of December 5, 1893, did not renew the policy of November 19,

1892, because A. S. Jones, the agent, did not make out the said renewal receipt in the form required by the defendant company, and that it was not signed by the president, attested by the secretary, and countersigned by the agent, as required in the Certificate of Authority, issued by the company. This Certificate of Authority reads as follows:

\*    \*    \*    \*    \*    \*    \*    \*    \*

We cannot agree with the contention of counsel for the defendant in their construction of this certificate, and of the rules and instructions set forth in the book of printed instructions to A. S. Jones, their agent. [2]

\*    \*    \*    \*    \*    \*    \*    \*    \*

It is your duty to take the construction of the court as to what the power is, and we think it is apparent that the agent had the authority to make a contract for insurance—that he had authority to make an agreement to renew the policy No. 1851. [3]

\*    \*    \*    \*    \*    \*    \*    \*    \*

We say to you, gentlemen, that if the contract of insurance or for a renewal was made by the defendant company's agent as claimed by the plaintiff, and he relied on the statements of A. S. Jones, agent, when he paid that $5.00, and he was to have sufficient time, until he was able to pay the balance, or pay it at some time again (as was stated, we believe, in his testimony afterwards, when he met Jones some other place; we believe he stated he would pay it to him in a short time), and he went away at that time fully believing and resting on the guaranty made by Jones as agent of the company that it was all right, and believed from that statement that he was fully insured to the amount of $800, that his policy No. 1851 was renewed for one year from the 19th of November, or one year from the 5th of December, 1893, why, the defendant company ought to pay whatever loss the plaintiff has sustained by reason of the fire of February 20, 1894. [4]

\*    \*    \*    \*    \*    \*    \*    \*    \*

Now, gentlemen, where is the preponderance of the evidence in this case? You have heard the evidence of the plaintiff, E. M. M'Cullough; if that is believed by you, we think he has made out a case. [5]

\*    \*    \*    \*    \*    \*    \*    \*    \*

He further alleges that the premium designated in the policy of insurance, $12.00, for one year, from the 19th of November, 1892, at noon, to the 19th day of November, 1893, at noon, which was paid, and the subsequent acceptance and receipt by the agent of $5.00, on account of $800 insurance renewal of said policy, paid said insurance at the rate fixed in the policy for the period of five months from the expiration of the policy, to wit, from the 19th of November, 1893, at noon, to the 19th of April, 1894, at noon. [6]

*Errors assigned* were, (1) refusal of binding instructions for defendant; (2-6) portions of the general charge as set out in the opinion of this court, quoting same; (7, 8) admission of the renewal receipts and answering defendant's third point in relation thereto, as set out in the statement of facts, reciting same.

*Don C. Corbett* and *C. Heydrick*, for appellant.—While no statute prohibits parol contracts of insurance, yet the Supreme Court of this state has recognized this distinction. A summary of the cases involving contracts of insurance in parol which we have been able to find are here given: Hamilton v. Ins. Co., 5 Pa. 339; Ins. Co. v. Johnson, 23 Pa. 72; Ins. Co. v. Robinson, Rea & Co., 56 Pa. 256; Patterson v. Ins. Co., 81* Pa. 454; Ins. Co. v. May's Exrs., 2 W. N. C. 43; Sanborn v. Ins. Co., 16 Gray, 448; Ellis v. Ins. Co., 50 N. Y. 402; Angell v. Ins. Co., 59 N. Y. 171; Cockerill v. Ins. Co., 16 Ohio, 148; Ins. Co. v. Kelly, 24 Ohio, 346; Ins. Co. v. Kinne, 77 Mich. 231. The printed instructions were in evidence and these were for the jury: American Life Ins. & Trust Co. v. Shultz, 82 Pa. 51.

*Jno. S. Shirley* and *C. Z. Gordon*, with them *Harry R. Wilson* and *W. D. Burns*, for appellee.

OPINION BY ORLADY, J., July 16, 1896 (after stating the facts as recited in the above statement of facts):

A vigorous defense was made by the company on the facts, but they were resolved against it by the jury returning a verdict in favor of the plaintiff for $865.06. This finding was

accepted as conclusive; no motion for a new trial was made, as the manifest weight of the evidence was with the plaintiff. There is no remedy in this court as to that phase of the case: Gates v. Watt, 127 Pa. 27.

The defendant's first point (1st assignment) was, "Under all the evidence in the case, the verdict should be for the defendant," the answer being, "we refuse this point as we have submitted it to you under all the evidence."

The testimony adduced as to what occurred when the parties met was of the most conflicting character. The contradictions between the agent of the defendant and the plaintiff could only be adjusted by the jury: Springfield F. &. M. Ins. Co. v. Brown, 128 Pa. 392; O'Hara v. U. B. Mut. Aid Society, 134 Pa. 417; Curry v. Sun Fire Office, 155 Pa. 471.

Appellant's third point (7th assignment) was, "The receipt dated December 5, 1893, in evidence is not a contract of insurance," and the answer, "We will answer that in the affirmative with this qualification: we do not say that the receipt of itself is sufficient to make a contract of insurance, but we say it is evidence of a contract of insurance, taken in connection with the testimony of the plaintiff, and you will consider the receipt and that evidence together with all the other evidence in the case."

The contention of defendant was, first, that Jones as agent did not in fact renew the policy No. 1851, which fact as stated was found against the company; the second proposition was, that Jones as agent did not have authority to bind this principal in any other way than prescribed in the certificate of authority issued to him, that is, as stated by the court in the charge (2d assignment), "The alleged renewal of December 5, 1893, did not renew the policy of November 19, 1892, because A. S. Jones, the agent, did not make out the said renewal receipt in the form required by the defendant company, and that it is not signed by the president, attested by the secretary and countersigned by the agent as required in the certificate of authority issued by the company. This Certificate of Authority reads as follows:

"Agency No. 1049. To A. S. Jones, Clarion, etc. This is to certify that the Hartford Fire Insurance Company reposing special trust and confidence in your ability and fidelity, . . . .

doth hereby appoint you agent thereof for Clarion and its vicinity, . . . . with power to receive proposals for insurance, fix rates of premium, receive monies, countersign, issue and renew policies when duly signed by its president and attested by its secretary . . . . subject to the rules of the office and the instructions which you may from time to time receive therefrom. For directions in detail for your guidance in transacting the business of your agency, you are referred to the book of instructions furnished you by the company, which will govern you in all matters to which the same relates, . . . . Dated at Hartford, Connecticut, September 2, 1878. (Signed) Geo. L. Chase, President; J. D. Browne, Secretary."

The company was incorporated in 1810, and its charter is perpetual. In regard to this certificate, the court say to the jury (3d assignment), " It is your duty to take the construction of the court as to what the power is, and we think it is apparent that the agent had the authority to make a contract for insurance, that he had authority to make an agreement to renew the policy No. 1851." And, " We cannot agree with the contention of counsel for the defendant in their construction of this certificate and of the rules and instructions set forth in the book of printed instructions to A. S. Jones, their agent." The policy No. 1851 expired by limitation of its term at noon November 19, 1893; the receipt and plaintiff's testimony claimed as evidence of the renewal for one year refer to transactions had on December 5, 1893. . We look in vain in the policy No. 1851, held by the assured, for any reference to the book of instructions furnished the agent by the company, as determining the authority of the agent to renew a policy.

The extracts read in evidence by the defendant show them to be personal instructions to the agent for the management of the company's affairs, and while binding between the parties advised of their conditions they could not affect third parties acting in good faith without notice. They could be changed from time to time as suggested therein and might be so varying and unstable as to make them utterly unreliable.

The question always is, not what power the agent does in fact possess, but what power the company held him out to the public as possessing: Independent B. & L. Assn. v. R. E. T. Co., 156 Pa. 181.

The powers of the agent are prima facie coextensive with the business intrusted to his care and will not be narrowed by limitations not communicated to the person with whom he deals : Adams Express Co. v. Schlessinger, 75 Pa. 246.

Policy No. 1851 is silent as to the manner in which a renewal is to be affected. It is not suggested anywhere that it is valid only where the signature of the executive officers are attached to a renewal receipt in a form furnished by the company and countersigned by the agent. It recites,—lines 49, 50,—" This policy may by a renewal be continued under the original stipulations, in consideration of premium for the renewed term, provided that any increase of hazard must be made known to this company at the time of renewal or this policy shall be void," but the forms or procedure to effect it are not suggested.

It is too late to say that a corporation can contract only by an instrument under its corporate seal. It has become a familiar principle that a corporation may, by the instrumentality of its agents, contract within the sphere of its functions pretty much as a natural person may: Hamilton v. Lycoming Ins. Co., 5 Pa. 339 ; Imperial Fire Ins. Co. v. Dunham, 117 Pa. 471.

The certificate of authority was offered in evidence by the plaintiff without objection, as produced by the defendant on request. Its integrity was not questioned. There was no obscurity in its terms. No fraud, accident or mistake affected it. It was the agent's authority to act for the defendant. Its construction was clearly for the court: Shafer v. Senseman, 125 Pa. 310 ; Palmer v. Farrell, 129 Pa. 162.

And the court was correct in the interpretation given, " It is apparent that the agent had the authority to make an agreement to renew the policy No. 1851," and that the rules and instructions set forth in the book of printed instructions to the agent were not a part of his authority to affect the plaintiff under the evidence in this case.

In Sheppard v. Peabody Ins. Co., 12 Ins. L. J. 817, the policy clause was, " this insurance may be continued for such further time as shall be agreed on provided the premium is paid and endorsed on the policy or a receipt given for the same." The receipt, " Received from John A. Sheppard, Admr. ten dollars, amount due on Peabody Insurance Policy, commenced September 3, 1874, till 3rd, 1875." The bill of exception, " That the

receipt of the 3rd day of September, 1874, which is for ten dollars exhibited to the jury, considered as a contract of insurance could not renew a policy which had expired on the 15th of August, 1874." And the reviewing court say, " as this receipt was ambiguous, the court in construing its meaning or the jury if they acted upon it, would have had a right to look at the situation of the parties and the circumstances surrounding them when this receipt was executed to ascertain its meaning."

Appellant urges (3d assignment) that the renewal of this policy, No. 1851, would only be operative when a renewal receipt in a form prepared by the company, and furnished the agent in blank, had been countersigned by the agent, after having been signed by the president and attested by the secretary, or in the words of the argument, " to obtain a renewal and pay the premium for the renewal term." " A renewal was a receipt furnished by the company with the signature of the executive officers thereon to be countersigned when used by the agent."

The charge to the jury was in the light of the evidence.

The receipt of December 5, 1893, was (8th assignment) " Objected to by defendant for the reason that the authority of A. S. Jones to make a receipt has not been shown, the plaintiff having only shown a part of the instructions referred to in the paper (certificate of authority) and here produced upon notice from the plaintiff, have not been given in evidence." This objection was overruled by the court and " admitted for the present." The book of instructions was offered by the defendant and received in evidence to show the agent's authority from the principal's standpoint, which removed the reason of the objection.

This receipt referred to the policy by its distinctive number. The agent testified that it was given at the request of the plaintiff and described the business in hand, " It was a request for a renewal of a former policy and former amount that had expired in the month before, in November."

It is not surprising the jury believed he intended by that writing to renew policy No. 1851. He kept the $5.00 until after the fire, without demand for the balance of the premium, or returning what he had. This conduct would induce plaintiff to believe he was protected and he so testified.

The agent was furnished with blank policies and renewal

receipts containing the signature in stereotype of the president and secretary, but it cannot be contended that his power to bind the company was limited to their use.

After hearing the testimony of the parties to the controversy, the jury adopted the version of the plaintiff as true, which under the record in this case means, so far as renewal of policy No. 1851 was in issue, that, on December 5, 1893, all the necessary facts to support it had been alleged and proven by the plaintiff, and the minds of the parties met in believing that, "this policy was continued by a renewal under the original stipulations in consideration of premium for the renewed term, without any increase of hazard," as provided for in the policy; the prepayment of the consideration for the renewed term had been waived, and that $5.00 was paid on account of the premium and the balance provided for in a way mutually satisfactory to the agent and insured: Elkins v. Susquehanna Fire Ins. Co., 113 Pa. 386; Farmers Mut. Ins. Co. v. Mylin, 2 Mona. 459.

It was an executed contract between the company and the plaintiff. The agent was authorized to accept payment of premiums, and could exercise his discretion as to the mode of payment: Lycoming Mut Fire Ins. Co. v. Bedford, 2 W. N. C. 529.

To adopt the argument of defendant's counsel, would be practically to say that the attempt to renew would be futile if the agent did not have the proper blanks; the death of a president or secretary would make it impossible until the vacancy should be filled.

The disputed facts were fairly submitted with a proper interpretation of the law.

The several assignments of error are dismissed and the judgment is affirmed.