Stewart, J.
The facts in the present case are not in dispute and are stated as follows as a finding of facts in the decision of the Board of Review:
‘ ‘ Prior to March 20, 1950, all claimants herein were *52 employed by The Gilbert Grocery Company (hereinafter designated as employer) which operates a wholesale grocery bnsinss in Portsmouth, Ohio. Early in March, 1950, a representative of Teamsters, Chauffeurs, Warehousemen & Helpers Local No. 134 (A. F. L.) contacted employer and stated that a majority of employer’s drivers and their helpers had ‘signed up’ and that said drivers and helpers were requesting negotiations for the establishment of a union shop. Employer refused to negotiate, pending certification of N. L. R. B. that the local was authorized to act as bargaining agent. On March 17 the union representative again contacted employer and received the same reply. On March 20, 1950, employer’s drivers and their helpers admittedly went on strike. Thereafter employer made no attempt to use its trucks or to deliver merchandise to any of its customers, but did continue to operate on a ‘come and get it’ basis, wherein customers called for their merchandise and hauled it away in their own vehicles.
“Claimants herein were not members of the striking union. They were not concerned in the dispute between employer and its drivers and helpers, and did not participate in the labor dispute or resulting strike in any way. Following the work stoppage by the drivers they continued to perform their usual and regular work and in the performance thereof they suffered no interference by the striking employees. However, lack of normal delivery service caused a substantial curtailment in employer’s business, and after a period of about ten days business had fallen off to a point where employer had no further work for claimants herein and released them from their employment, giving as the reason therefor, lack of work. However,' employer continued to operate on a curtailed basis, with a skeleton force, throughout the entire period of the drivers’ dispute, which terminated about August *53 21, 1950. Thereafter, normal operations were again resumed, and claimants were recalled to work as fast as increasing business warranted.”
Subdivision d of Section 1345-6, General Code (122 Ohio Laws, 710), provided in part as follows:
“d. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual:
“ (1) lost his employment or has left his employment by reason of a labor dispute (other than a lockout) at the factory, establishment, or other premises at which he was employed, as long as such labor dispute continues.”
Subdivision C of Section 4141.29, Revised Code, contains this same provision, and subdivision (a) designates the employees who are eligible for benefits.
In the majority opinion of the Board of Review it was held that in order to disqualify claimants it must be determined that there was a direct causal relationship between the drivers’ dispute and claimants’ loss of employment, and that claimants lost their employment as a result of an intervening cause between the labor dispute and the loss, to wit, the establishment of a new operational policy of the employer in his business without the services of its drivers, i. e., without delivery service to its customers.
It seems to us that this proposition is completely answered in the dissenting opinion of the lawyer member of the Board of Review, wherein it is stated:
“Faced with these facts, the majority attempts to break the chain by advancing the theory that the lack of work was not due to the labor dispute but was due to a change in the ‘operational policy’ of the employer and this change in policy was an intervening cause which broke the chain of causation and was the proxi *54 mate cause of the layoff of claimants. Where, in the record, is there any evidence of any such change of policy? It is true that, because of the strike, the employer was no longer able to make deliveries but his failure to do so was the direct result of the strike and was not an intervening cause, as suggested in the majority opinion. If a change of policy was established by the employer, presumably resulting in a permanent reduction in his staff, why did claimants contact employer periodically during the strike to inquire about their jobs, and why did the employer immediately put them back to work as soon as possible after the strike terminated? The answers to these questions are quite obvious. There was no change in policy and none was intended. The strike was the only force which set into operation an uninterrupted chain of events which was the proximate cause of the unemployment of claimants herein. The theory of intervening cause is not supported by any facts and apparently was injected into this cause as a diversionary measure, but no amount of legal gymnastics can serve to camouflage the fact that claimants herein became unemployed by reason of a labor dispute.
“The majority also points out that claimants herein were involuntarily unemployed. After discussing, in some detail, factual situations which frequently exist in labor dispute cases, it is pointed out that claimants were not members of the union which called the strike, were not active participants therein, nor in sympathy therewith and did not voluntarily leave their jobs or refuse to pass a picket line. Reference to Section 1345-6-d-l discloses that none of the matters discussed are factors to be considered in determining if an individual lost his employment by reason of a labor dispute. While many states do provide for ‘escape’ clauses in the nature of those enumerated in the majority opinion, the Ohio law does not. If an *55 individual loses his employment by reason of a labor dispute, he is not entitled to unemployment benefits for the duration thereof and it does not make any difference whether he was a member of the union which called the strike, whether or not he participated therein or was in sympathy therewith, or whether or not any of the other situations discussed by the majority were present. This type of case is not unique, as stated in the majority opinion. Labor disputes frequently interrupt the continued employment of disinterested employees, but, as hereinafter pointed out, any unemployment that is caused thereby is not recognized as compensable under our unemployment compensation law. ’ ’
It must be borne in mind that the right to unemployment benefits is purely statutory, that the unemployment benefit fund is made up in bulk of employers’ contributions, employees not being required to contribute anything, and that only those are entitled to benefits who come within the terms of the statute granting the same.
The statute provides that no individual may be paid benefits for the duration of any period of unemployment, where the administrator finds that such individual lost his employment or left his employment by reason of a labor dispute. The leaving of his employment by an individual usually contemplates a voluntary act upon his part, whereas the losing of employment usually contemplates an involuntary act.
In 25 Words and Phrases, 652, it is stated:
“The word ‘lost’ according to the various definitions of it as found in Webster’s Dictionary, implies an inability to retain or recover, or an involuntary deprivation of the thing which is said to be lost. In the ordinary and common sense of the word no man can be said to have lost a situation which he of his own motion and without any reasonable compelling cause *56 resigns, and the duties of which of his own free will he refuses longer to discharge. A situation as teacher may be lost from sickness or personal injury, by the failure of the principal to reappoint, or by discharge to make room for another, or by the insolvency of the employer, or the destruction of the buildings by fire; but the situation is not lost when the person voluntarily resigns and abandons to take another, which under the circumstances he prefers.” In support of such text is cited Shafer v. Senseman, Exrx., 125 Pa., 310, 17 A., 350.
In the present case those who went out on strike or quit their employment in sympathy with the strikers left their employment. Claimants, who were involuntarily deprived of their employment, lost their employment, and the statute makes both groups ineligible for unemployment compensation.
Not only has Ohio not provided a so-called “escape” clause for those who, without fault on their part, lose their employment by reason of a labor dispute, but our General Assembly has affirmatively declined to provide such an “escape” clause.
In the 98th General Assembly, Senator Guthrie introduced Amended Senate Bill No. 142, a bill to amend Sections 1345-1, 1345-4, 1345-6, 1345-8, 1345-10 and to enact Section 1345-33 of the General Code, relative to unemployment compensation. Lines 723 through 745 of the bill read as follows:
“d. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting-period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual:
“(1) lost his employment or has left his employment by reason of a labor dispute (other than a lockout) at the factory, establishment, or other premises *57 at which he was employed, as long as such labor dispute continues. There will be no disqualification, however, if the following facts exist:
“(A) The individual is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and
“(B) He does not belong to a grade, particular union local, or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; and
“ (C) He has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in his own or some other establishment or factory in which a labor dispute is in progress.
“If, in any case, separate plants which are commonly conducted as separate businesses are located on separate premises which are not on the same, adjoining, or physically proximate property, each plant will, for the purpose of the foregoing provisions, be deemed to be a separate factory, establishment, or other premises.” (Emphasis ours.)
Amended Senate Bill No. 142 was overwhelmingly passed in both the Senate and the House, but not until after the italicized language had, by amendments, been entirely deleted therefrom.
It seems manifest from the preceding legislative history that the General Assembly positively intended that any person who loses his employment voluntarily or involuntarily, as a result of a labor dispute, shall not be eligible for unemployment benefits as long as that labor dispute continues.
In the Miller case, supra, decided by the Court of Appeals for Lucas County there was no written opinion, and the Court of Appeals for Tuscarawas County, *58 in case No. 801 in that conrt, a likewise similar case, held in accord with the judgment in the present case but no opinion was written.
This court granted a motion to certify the record in the Miller case, but before there was a hearing on the merits, the appeal was dismissed for the reason that the appellant Board of Review was unauthorized in law to take the appeal.
Using the language of the unanimous opinion of the Court of Appeals in the present case, we conclude as follows:
“There is no qualifying escape clause provided in our statute but, in plain and unambiguous language, the statute provides: ‘that such individual lost his employment or has left his employment by reason of a labor dispute.’ Had the Legislature intended a different result this provision of the statute could easily have been worded by the use of appropriate language to cover a situation of this kind. In the construction of a statute a court has no right to extend or improve the provisions of a statute to meet a situation not provided for. As much as we might desire to see these claimants receive unemployment benefits, we have no authority to add or supply language to the statute to accomplish that purpose when the statute does not so provide. The statute does not differentiate between those individuals who are actually on strike and those individuals who are innocently unemployed because of said strike. The only question we are called upon to answer is, did these claimants lose their employment by reason of a labor dispute. The only answer to this question must be in the affirmative.”
In our opinion, the only way in which this court could grant relief .to the claimants in this case would be by amending the statute, which the General Assembly, the only branch of government with power to legislate, has affirmatively declined to do.
*59 We can not repeat too frequently that the sole function of a court is jus dicere non jus dare.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taet, JJ., concur.