## STOCKARD *v.* MORGAN.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No 195. Submitted March 19, 1902.—Decided April 7, 1902.

Giving to the statute of Tennessee the same meaning that was given to it by the Supreme Court of that State, which this court is bound to do, it is *held* that it violates the interstate commerce clause of the Constitution of the United States.

All the cases cited in the opinion of the court deny the right of a State to tax people representing owners of property outside the State for the privilege of soliciting orders within it, as agents of such owners, for property to be shipped to persons within the State.

*Ficklen* v. *Shelby County Taxing District,* 145 U. S. 1, distinguished from this case.

Although a State has general power to tax individuals and property within its jurisdiction, yet it has no power to tax interstate commerce, even in the person of a resident of the State.

THIS is a writ of error to the Supreme Court of the State of Tennessee, brought to review a judgment of that court reversing a judgment of the Court of Chancery of Hamilton County in favor of complainants, and dismissing their bill.

The complainants sought to enjoin the collection of a tax imposed upon them under a statute of Tennessee, upon the ground that they were not liable for the tax because they were agents and brokers exclusively for the sale of the property of non-resident principals, and did no business of any kind for residents of the State. They also averred that the state statute, properly construed, did not include their business, but if it did, it was void as contravening the Federal Constitution in its interstate commerce clause.

The defendants by answer averred that they sought to collect the tax under the authority of the statute of the State of Tennessee, providing for the collection of a privilege tax on the occupation of the complainants as merchandise brokers, and that such statute was valid.

Other parties similarly situated commenced suits against the

defendants to obtain like relief. By an agreement, which was approved by the court, all the cases were consolidated under the style of *Stockard & Jones* v. *Morgan and others*, under which title it was agreed that they should thereafter proceed as one case.

The case came to trial in the Chancery Court upon the following agreed statement of facts:

"In this consolidated cause the following agreement is made as to the facts relating to the matters in controversy, viz.:

"It is agreed that the several complainants in the original bills, to wit, J. H. McReynolds, Stockard & Jones, W. G. Oehmig, T. M. Carothers and J. H. Allison are residents of Hamilton County, Tennessee.

"That said J. H. McReynolds has been carrying on business in Chattanooga, said county and State, during the present year, 1900; that said Stockard & Jones, W. G. Oehmig, T. M. Carothers and J. H. Allison have been carrying on business in said city during the years 1897, 1898, 1899 and 1900.

"That the character of said business so carried on by the respective complainants, or the manner of conducting the business of each, is and has been as follows:

"The complainant, as the representative of non-resident parties, firms or corporations, solicits orders for goods from jobbers or wholesale dealers in Chattanooga, Tennessee, and when such orders are obtained sends them to his non-resident principal or principals. If an order is accepted the goods are shipped by such non-resident principal or principals to the local jobber or wholesale dealer. Up to the time of the sale the goods in all instances belong to the non-resident principal or principals, and are shipped to the State of Tennessee from another State.

"In making sales or soliciting orders for the goods the complainant sometimes exhibits samples to the local jobber or wholesale dealer and sometimes takes the orders without showing a sample.

"Unless complainant has been previously authorized by the principal or principals to sell at a fixed price, the orders are taken subject to acceptance or rejection by such non-resident principal or principals, who own the goods.

"At the end of each month, or at stated periods, the complainant is paid a commission by such non-resident principal or principals for goods previously sold on accepted orders. No commission is paid on orders taken but rejected. Complainant does not receive for his services any pay or salary from any local jobber or dealer or resident of Tennessee, nor does he assume to represent, or represent or hold himself out as representing, any resident of Tennessee or negotiate any sales of goods for residents of Tennessee. His principals are all residents of other States of the United States, and the goods sold are shipped from such other State to the State of Tennessee for delivery to buyers who reside in Tennessee.

"The complainant has an office or 'headquarters' in Chattanooga, Tenn., where he keeps samples, stationery and other articles; but he travels around on foot daily or frequently in drumming or soliciting orders for goods, as before stated. His principals are specific parties, firms or corporations, all non-residents of Tennessee and residents of other States in the United States, and he does not represent or hold himself out as representing the public in general, or negotiate or sell for any resident of Tennessee.

"The defendants and solicitors for the State of Tennessee and Hamilton County contend that, under the facts, the complainants are 'merchandise brokers,' and each of them is bound for privilege taxes under the laws of Tennessee.

"That J. H. McReynolds should pay a privilege tax for 1900 to the State of $20.00, and to the county of $20.00.

"That Stockard & Jones should pay to the State $20.00 for each of the years 1897, 1898, 1899 and 1900, and a like sum for each of said years to the county of Hamilton.

"That each of the other complainants owe the same sums as Stockard & Jones.

"That all of the complainants should be held for proper penalties, costs and attorneys' fees if they are held liable for such taxes.

"The complainants contend that they are engaged exclusively in interstate commerce and are not bound for such privilege taxes; further, that the revenue laws of Tennessee appli-

cable to ' merchandise brokers' do not include these complainants,
so as make them subject to privilege taxes; but even if such
laws do include complainants, yet they are inoperative and void
as against complainants, who are engaged solely in interstate
commerce."

By agreement of the parties two questions only were argued
in the state court: (1) whether or not complainants were
merchandise brokers and subject by statute to tax as such;
(2) whether or not their business constituted interstate com-
merce, and therefore was beyond the reach of the State's taxing
power.

The chancellor held that the complainants were not liable
for the privilege tax and enjoined its collection perpetually, and
adjudged the costs against Hamilton County. From the judg-
ment so entered the defendants appealed to the Supreme Court
of the State, which, as stated, reversed the judgment and dis-
missed the bill, holding the complainant's business was covered
by the statute, and that it did not violate the Constitution of
the United States.

*Mr. Robert Pritchard* for plaintiffs in error.   *Mr. J. B. Sizer*
and *Mr. R. P. Woodard* were on his brief.

*Mr. George W. Pickle* for defendant in error.

MR. JUSTICE PECKHAM, after making the foregoing statement
of facts, delivered the opinion of the court.

In this case we are bound to give the same meaning to the
state statute that was given to it by the Supreme Court of the
State, and the question which remains for us to decide is, whether
as so construed the statute violates any provision of the Federal
Constitution.

We think it violates the interstate commerce clause of the
Constitution of the United States, and that this court has in
several cases decided the principle which invalidates the statute
so far as it affects the business of the complainants.   The prin-
ciple is contained in the cases of *Brown* v. *Maryland*, 12 Wheat.

419, and *Welton* v. *Missouri*, 91 U. S. 275. Subsequently the case of *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, was decided, which is one of the leading cases upon the subject now in hand, and we think that it is decisive of the case before us. That case was tried upon an agreed statement of facts as follows:

"Sabine Robbins is a citizen and resident of Cincinnati, Ohio, and on the ·day of , 1884, was engaged in the business of drumming in the taxing district of Shelby County, Tenn.; *i. e.*, soliciting trade by the use of samples for the house or firm for which he worked as a drummer, said firm being the firm of 'Rose, Robbins & Co.,' doing business in Cincinnati, and all the members of said firm being citizens and residents of Cincinnati, Ohio. While engaged in the act of drumming for said firm, and for the claimed offence of not having taken out the required license for doing said business, the defendant, Sabine Robbins, was arrested by one of the Memphis or taxing district police force, and carried before the Hon. D. P. Hadden, president of the taxing district, and fined for the offence of drumming without a license. It is admitted the firm of 'Rose, Robbins & Co.' are engaged in the selling of paper, writing materials and such articles as are used in the book stores of the taxing district of Shelby County, and that it was a line of such articles for the sale of which the said defendant herein was drumming at the time of his arrest."

The court held upon these facts that the statute of Tennessee of 1881, enacting that "all drummers and all persons not having a regular licensed house of business in the taxing district 'of Shelby County,' offering for sale, or selling goods, wares or merchandise therein by sample, shall be required to pay to the county trustee the sum of $10 per week, or $25 per month, for such privilege," was void as against Robbins.

The opinion of the court was delivered by Mr. Justice Bradley, in the course of which he said (page 494):

"In a word, it may be said, that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems. The doctrine of the freedom of that com-

merce, except as regulated by Congress, is so firmly established that it is unnecessary to enlarge further upon the subject. In view of these fundamental principles, which are to govern our decision, we may approach the question submitted to us in the present case, and inquire whether it is competent for a State to levy a tax or impose any other restriction upon the citizens or inhabitants of other States, for selling or seeking to sell their goods in such State before they are introduced therein. Do not such restrictions affect the very foundation of interstate trade? How is a manufacturer, or a merchant, of one State to sell his goods in another State, without in some way obtaining orders therefor? Must he be compelled to send them at a venture, without knowing whether there is any demand for them? This may, undoubtedly, be safely done with regard to some products for which there is always a market and a demand, or where the course of trade has established a general and unlimited demand. A raiser of farm produce in New Jersey or Connecticut, or a manufacturer of leather or wooden ware, may, perhaps, safely take his goods to the city of New York and be sure of finding a stable and reliable market for them. But there are hundreds, perhaps thousands, of articles which no person would think of exporting to another State without first procuring an order for them. It is true, a merchant or manufacturer in one State may erect or hire a warehouse or store in another State, in which to place his goods, and await the chances of being able to sell them. But this would require a warehouse or store in every State with which he might desire to trade. Surely, he cannot be compelled to take this inconvenient and expensive course. In certain branches of business he may adopt it with advantage. Many manufacturers do open houses or places of business in other States than those in which they reside, and send their goods there to be kept on sale. But this is a matter of convenience, and not of compulsion, and would neither suit the convenience nor be within the ability of many others engaged in the same kind of business, and would be entirely unsuited to many branches of business. In these cases, then, what shall the merchant or manufacturer do who wishes to sell his goods in other States? Must he sit still in his factory or warehouse, and

wait for the people of those States to come to him? This would be a silly and ruinous proceeding. The only way, and the one, perhaps, which most extensively prevails, is to obtain orders from persons residing or doing business in those other States. But how is the merchant or manufacturer to secure such orders? If he may be taxed by such States for doing so, who shall limit the tax? It may amount to prohibition. To say that such a tax is not a burden upon interstate commerce is to speak at least unadvisedly and without due attention to the truth of things."

And again at page 496:

"But it will be said that a denial of this power of taxation will interfere with the rights of the State to tax business pursuits and callings carried on within its limits, and its rights to require licenses for carrying on those which are declared to be privileges. This may be true to a certain extent; but only in those cases in which the States themselves, as well as individual citizens, are subject to the restraints of the higher law of the Constitution. And this interference will be very limited in its operation. It will only prevent the levy of a tax, or the requirement of a license, for making negotiations in the conduct of interstate commerce; and it may well be asked where the State gets authority for imposing burdens on that branch of business any more than for imposing a tax on the business of importing from foreign countries, or even on that of postmaster or United States marshal. The mere calling the business of a drummer a privilege cannot make it so. Can the state legislature make it a Tennessee privilege to carry on the business of importing goods from foreign countries? If not, has it any better right to make it a state privilege to carry on interstate commerce? It seems to be forgotten, in argument, that the people of this country are citizens of the United States, as well as of the individual States, and that they have some rights under the Constitution and laws of the former independent of the latter, and free from any interference or restraint from them."

Other cases followed the *Robbins* case, among them, *Philadelphia & Southern Steamship Co.* v. *Pennsylvania*, 122 U. S.

326; *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Asher* v. *Texas*, 128 U. S. 129; *Stoutenburgh* v. *Hennick*, 129 U. S. 141; *McCall* v. *California*, 136 U. S. 104; *Norfolk & Western Railroad Co.* v. *Pennsylvania*, 136 U. S. 114; *Crutcher* v. *Kentucky*, 141 U. S. 47. These cases exhibit different phases of the same general principle, but all follow that principle as announced in the *Robbins* case, and deny the right of the State to tax people representing the owners of property outside of the State, for the privilege of soliciting orders within it as agents of such owners for property to be shipped to persons within the State. We think they cover the facts of the case at bar and render the statute as construed by the state court invalid so far as it affects the business of the complainants described in the agreed statement of facts above set forth.

The defendants in error, admitting the finality of the decisions above referred to in regard to the questions therein decided, claim that they do not in truth cover the case before us, and they urge that it is controlled by *Ficklen* v. *Shelby County Taxing District*, 145 U. S. 1. A reference to that case shows important and material distinctions of fact which render it unlike the one now before us. The opinion of the court was delivered by the present Chief Justice, who, while recognizing and approving the *Robbins* and other similar cases, distinguished them from the one then under review. In the course of his opinion he said (page 20):

"In the case at bar the complainants were established and did business in the taxing district as general merchandise brokers, and were taxed as such under section nine of chapter ninety-six of the Tennessee laws of 1881, which embraced a different subject-matter from section sixteen of that chapter. For the year 1887 they paid the $50 tax charged, gave bond to report their gross commissions at the end of the year, and thereupon received, and throughout the entire year held, a general and unrestricted license to do business as such brokers. They were thereby authorized to do any and all kinds of commission business and became liable to pay the privilege tax in question, which was fixed in part, and in part graduated according to the amount of capital invested in the business, or if no capital were

invested, by the amount of commissions received. Although their principals happened during 1887, as to the one party, to be wholly non-resident, and to the other, largely such, this fact might have been otherwise then and afterwards, as their business was not confined to transactions for non-residents. In the case of. Robbins the tax was held, in effect, not to be a tax on Robbins, but on his principals; while here the tax was clearly levied upon complainants in respect of the general commission business they conducted, and their property engaged therein, or their profits realized therefrom."

And again (at page 24) it was said :

"We agree with the Supreme Court of the State that the complainants have taken out licenses under the law in question to do a general commission business, and having given bond to report their commissions during the year, and to pay the required percentage thereon, could not, when they applied for similar licenses for the ensuing year, resort to the courts because the municipal authorities refused to issue such licenses without the payment of the stipulated tax. What position they would have occupied if they had not undertaken to do a general commission business, and had taken out no licenses therefor, but had simply transacted business for non-resident principals, is an entirely different question, which does not arise upon this record."

From these extracts from the opinion it is seen that a material fact in the case was that Ficklen had taken out a general and unrestricted license to do business as a broker, and he was thereby authorized to do any and all kinds of commission business, and therefore became liable to pay the privilege tax exacted. Although Ficklen's principals happened in the year 1887 to be wholly non-residents, the fact might have been otherwise, as was stated by the Chief Justice, because his business was not confined to transactions for non-residents.

In this case the complainants did not represent or assume to represent any residents of the State of Tennessee, and each of the complainants represented only certain specific parties, firms or corporations, all of whom were non-residents of Tennessee. They did no business for a general public. We attach no importance to the fact that in the *Robbins* case the individual

taxed resided outside of the State. He was taxed by reason of his business or occupation while within it, and the tax was held to be a tax upon interstate commerce. Nor does the fact that the complainants acted for more than one person residing outside of the State affect the question. If while so acting and soliciting orders within the State for the sale of property for one non-resident of the State, the person so soliciting was exempt from taxation on account of that business, because the tax would be upon interstate commerce, we do not see how he could become liable for such tax because he did business for more than one individual, firm or corporation, all being non-residents of the State of Tennessee. The fact that the State or the court may call the business of an individual, when employed by more than one person outside of the State, to sell their merchandise upon commission, a "brokerage business," gives no authority to the State to tax such a business as complainants.' The name does not alter the character of the transaction, nor prevent the tax thus laid from being a tax upon interstate commerce. As was said by Mr. Justice Bradley, in the *Robbins* case, *supra*, "The mere calling the business of a drummer a privilege cannot make it so. Can the state legislature make it a Tennessee privilege to carry on the business of importing goods from foreign countries? If not, has it any better right to make it a state privilege to carry on interstate commerce?" It is still a carrying on of interstate commerce, whether the party is acting for one or more principals residing outside of the State and selling their goods through his procurement, acting for them as their agent.

We cannot see that the *Ficklen* case rules the one before us. Although it is plain from the opinion of the Chief Justice that there was not the slightest intention of casting any doubt upon the correctness of the decisions in the *Robbins* and other cases above cited, it is subsequently stated in *Brennan* v. *Titusville*, 153 U. S. 289, that the case of *Ficklen* "is no departure from the rule of decision so firmly established by the prior cases." In speaking of the distinguishing features of the *Ficklen* case, Mr. Justice Brewer, in delivering the opinion of the court in *Brennan* v. *Titusville*, said (at page 307): "In other words, the

tax imposed was for the privilege of doing a general commission business within the State, and whatever were the results pecuniarily to the licensees, or the manner in which they carried on business, the fact remained unchanged that the State had, for a stipulated price, granted them this privilege. . It was thought by a majority of the court that to release them from the obligations of their bonds on account of the accidental results of the year's business was refining too much, and that the plaintiffs who had sought the privilege of engaging in a general business should be bound by the contracts which they had made with the State therefor."

Although it is said in the opinion of the state court herein that the thing taxed is the occupation of merchandise brokerage, and not the business of those employing the brokers, yet we have seen from the cases already cited that when the tax is applied to an individual within the State selling the goods of his principal who is a non-resident of the State, it is in effect a tax upon interstate commerce, and that fact is not in anywise altered by calling the tax one upon the occupation of the individual residing within the State while acting as the agent of a non-resident principal. The tax remains one upon interstate commerce, under whatever name it may be designated.

That such a tax amounts to an invasion of the commerce clause of the Constitution of the United States is held in *Stratford* v. *City Council of Montgomery*, 110 Alabama, 619, in a most satisfactory opinion by Chief Justice Brickell. In speaking of the tax under the Alabama statute, he said (p. 628): " While, as we have shown, the business of the defendant was general, so as to constitute him a broker, it by no means follows that it required he should also take local business. He might, as he did, confine himself to the interstate business and still be a ' broker,' without becoming liable to the tax." The statute of Alabama is similar to the one in Tennessee, and the facts in the above case are almost identical with those agreed upon herein.

Although the State has general power to tax individuals and property within its jurisdiction, yet it has no power to tax interstate commerce, even in the person of a resident of the State.

We regard this case as within the *Robbins* and other similar cases above referred to, and it follows that the judgment of the Supreme Court of Tennessee, holding the complainants liable to pay the tax demanded, was erroneous.

> *The judgment of that court is, therefore, reversed, and the case remanded for further proceedings not inconsistent with the opinion of this court. It is so ordered.*

MR. JUSTICE GRAY took no part in the decision of this case.