## Commonwealth v. Rearick, Appellant.

*Hawkers and peddlers—License tax—Boroughs—Interstate commerce—Original package—Constitutional law.*

The authority of a borough to require persons canvassing from house to house and upon the streets, for the purpose of selling goods at retail, or delivering goods in pursuance of orders obtained by such canvassing, to take out a license, and to impose a penalty for the violation of such an ordinance is within the police power delegated by the general borough law of April 3, 1851, P. L. 320.

An importer, whether he be a citizen of the state or not, may sell the imported goods in the original packages, free from state regulation; but when the importer has so acted upon the thing imported that it has lost its distinctive character as an import, and he undertakes to distribute the contents of the package to a large number of distinct purchasers, or the performance of a number of independent executory contracts of sale, made prior to the importation with different parties, such delivery is no longer interstate but has become domestic commerce, and is subject to state control, so long as that control is exercised in a manner which does not involve discrimination among dealers or the sources from which the goods come.

An importation of goods may be divided into any number of original packages and still be subject to national control; it is only when the contents of an original package is divided for the purpose of distribution that

the goods become subject to local regulation. The removal of the outer covering does not necessarily change the character of the importation as an original package, a specific object may retain its identity, although the box or bag which has protected it during transportation has been removed. The vital element is the retention of the identity of the contents of the package, as a unit of importation.

Where orders are taken in this state for single brooms, and the seller in another state tags the brooms with the names of the purchasers and ties them up into bundles and they are then sent to the seller's agent in Pennsylvania, who unties the bundles and delivers the brooms to the several purchasers, the brooms thus delivered are not the subject of interstate commerce, and the agent who takes the orders and delivers them may be convicted of hawking and peddling without a license in violation of a borough ordinance.

A state may by statute, and a municipality by ordinance, under authority duly delegated, enact and ordain reasonable regulations with regard to peddling and canvassing for the sale of goods from house to house.

A borough may pass a valid ordinance imposing a license tax on all who sell by canvassing and delivering from house to house, articles "not of their own production or manufacture." It is not improper classification to distinguish between dealers who buy to sell again, and manufacturers and producers who make to sell and sell only what they make.

Argued Oct. 30, 1903.   Appeal, No. 171, Oct. T., 1903, by defendants from judgment of Q. S. Northumberland Co., affirming judgment of justice of the peace in case of Commonwealth v. N. L. Rearick.   Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Appeal from judgment of justice of the peace.

The facts appear by the opinion of the Superior Court.

*Error assigned* was order affirming judgment of the justice of the peace.

*Max L. Mitchell* and *P. S. Karshner*, for appellant.—The delivery of the goods to a buyer at his residence in one state, that have been sent, in pursuance of contract, by a seller in another state, is interstate commerce and subject to no state or local burdens, the right to solicit orders implies the obligation and the right to deliver the goods in the manner called for by the contracts, and the means by which the delivery is made cannot be controlled by the states : Bowman v. Chicago, etc., Ry. Co., 125 U. S. 465 (8 Sup. Ct. Repr. 689) ; State Freight

Tax, 82 U. S. 232; Rhodes v. Iowa, 170 U. S. 412 (18 Sup. Ct. Repr. 664).

The right to solicit orders implies the obligation and the right to deliver the goods, and the manner in which the delivery is made cannot be controlled by the states: Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196 (5 Sup. Ct. Repr. 826); Caldwell v. North Carolina, 187 U. S. 622 (23 Sup. Ct. Repr. 229); New Castle v. Cutler, 15 Pa. Superior Ct. 612; In re Spain, 47 Fed. Repr. 208; In re Nichols, 48 Fed. Repr. 164; In re Tyerman, 48 Fed. Repr. 167; Huntington v. Mahan, 142 Ind. 695 (42 N. E. Repr. 463); Tax Collector v. Pettigrew, 44 La. 356 (10 So. Repr. 853); State v. Willingham, 9 Wyoming, 290 (62 Pac. Repr. 797).

The ordinance in question is unconstitutional and void for the reasons that it abridges the right, freedom and liberty of contract; it discriminates between persons and denies the equal protection of the laws; it gives rights, privileges and immunities to some which it denies to others; it violates section one of the fourteenth amendment of the constitution of the United States, which provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws:" Connolly v. Union Sewer Pipe Co., 184 U. S. 540 (22 Sup. Ct. Repr. 431; Missouri v. Lewis, 101 U. S. 22; Duncan v. Missouri, 152 U. S. 377 (14 Sup. Ct. Repr. 570).

*Harry S. Knight,* for appellee.—The Sunbury ordinance does not violate the federal constitution in that it discriminates in favor of producers: New Castle v. Cutler, 15 Pa. Superior Ct. 612.

The ordinance is a proper police regulation or as applied to the facts of this case, an attempt to regulate interstate commerce: Leisy v. Hardin, 135 U. S. 100 (10 Sup. Ct. Repr. 681); R. R. Co. v. Husen, 95 U. S. 465; Plumley v. Mass., 155 U. S. 478.

The defendant at the time of delivering the brooms, etc., was not engaged in inter or intra state commerce: Com. v.

Hess, 148 Pa. 98; Com. v. Holstine, 132 Pa. 357; Garbracht v. Com., 96 Pa. 449; Com. v. Fleming, 130 Pa. 138; Austin v. Tenn., 179 U. S. 343 (21 Sup. Ct. Repr. 132).

OPINION BY PORTER, J., October 17, 1904:

The defendant was convicted under the provisions of an ordinance of the borough of Sunbury requiring all "persons who sell at retail, by sample or otherwise, or solicit orders at retail, or deliver at retail, either on the streets or by traveling from house to house within the limits of the borough of Sunbury, any books, paintings, foreign or domestic goods, wares, merchandise or fruits, not of their own manufacture or production, without first obtaining from the chief burgess of the borough of Sunbury a license for such purpose; " and imposing a penalty for "selling, canvassing or delivering as aforesaid, without having first obtained and paid for a license." The authority of the borough to require persons canvassing from house to house and upon the streets, for the purpose of selling goods at retail, or delivering goods in pursuance of orders obtained by such canvassing, to take out a license, and to impose a penalty for the violation of such an ordinance is within the police power delegated by the general borough law of April 3, 1851, P. L. 320 : Borough of Warren v. Geer, 117 Pa. 207; North Wales Borough v. Brownback, 10 Pa. Superior Ct. 227; Brownback v. North Wales Borough, 194 Pa. 609; Mechanicsburg Borough v. Koons, 18 Pa. Superior Ct. 131. The specifications of error in this case do not raise any question of the delegation by the state to the borough of the authority to regulate by ordinance the business of itinerant dealers selling their wares upon the streets and by canvassing from house to house; nor do they involve any consideration of the sufficiency of the testimony to warrant a finding that the defendant had violated the provisions of the ordinance. The only questions raised in the court below, or upon this appeal, involve the rights of the defendant under the constitution of the United States.

The appellant has, as required by the rules of this court, stated the questions involved in this proceeding to be : "1. Whether an agent of a business house in one state, who delivers merchandise consigned to him for that purpose by his

principal, to residents of another state, who had previously ordered the same, is engaged in interstate commerce ? " and " 2. Whether the ordinance of the borough of Sunbury violates section 1 of the Fourteenth Amendment of the Constitution of the United States." We have, therefore, to deal with only federal questions.

The consideration of the first question necessarily involves an examination into the provisions of the contract and the manner of performance thereof, as agreed upon in writing by the parties in the court below. The Citizens' Wholesale Supply Company is a corporation organized under the laws of the state of Ohio, located and doing business as grocers in the city of Columbus in said state. The business includes the selling of groceries, sundries and other articles for domestic purposes. In conducting said business the corporation employs agents who, under the directions of the company, solicit orders for groceries and articles of like character by exhibiting samples, in the state of Pennsylvania and other states of the union by going personally to residents and citizens of said states, and when necessary from house to house in said states. Kunkle, a resident of the state of Pennsylvania, was employed by said company to solicit orders for groceries and other articles in the manner stated, and during the month of March, 1902, went from house to house in the borough of Sunbury, and solicited and took orders for groceries in the manner aforesaid, " being such goods as are usually sold by grocers." After he had taken a large number of orders for goods, said orders were forwarded to the company at Columbus, Ohio, whereupon said corporation filled said orders in the following manner: " If a particular person ordered twenty pounds of sugar, ten pounds of coffee, ten pounds of prunes and fifteen pounds of rice, the company put up in packages twenty pounds of sugar, ten pounds of coffee, ten pounds of prunes and fifteen pounds of rice. These packages to fill this particular order were then placed in one or more boxes, the lids placed on the box or boxes and nailed fast. The name of the agent of the company who was to make the delivery of the packages at Sunbury and the name of the purchaser of the contents of each box was then stenciled on said box or boxes." N. L. Rearick was the agent of the com-

pany to receive the goods at Sunbury, and the goods to fill each particular order were placed in one or more boxes, and closed as aforesaid, and marked " N. L. Rearick, Sunbury, Pa. For Mrs. Dan Daly," or whatever the name of the purchaser was. All goods were marked and packed in this manner with the exception of brooms. The orders for brooms were filled in the following manner : " If one man, say John Smith, ordered one broom which was included in his order for other goods, a broom was selected at the place of business of said company at Columbus, Ohio, to fill said order and a tag was marked in the following manner, and tied by a string to the handle of said broom : ' To N. L. Rearick, Sunbury, Pa. For John Smith, one broom ; from the Citizens' Wholesale Supply Company, Columbus, Ohio.' " If any customer ordered more than one broom, the figure before the word broom on the tag was changed accordingly and the tag was tied to a string which was wrapped around and tied to the handles of all the brooms ordered by that customer. " All brooms ordered by the several purchasers were selected to fill the order and packed in a similar manner to that above described. The brooms were then aggregated together in bundles of a dozen each, or some such number, a paper wrapped around the straw part and around the paper and the bundles a twine was wound and tied to keep the bundles together. The brooms were tied in bundles solely for convenience in shipping. The brooms and boxes above described were then shipped from Columbus, Ohio, by said company, over the Pennsylvania Railroad, to its agent, N. L. Rearick, at Sunbury, Pa." The corporation kept no book accounts with the parties from whom orders had been taken by Kunkle, and extended no credit to such persons. The goods were sold for cash, to be paid for upon delivery at the residences of the several purchasers. All the goods shipped in pursuance of the orders were shipped to Rearick for delivery, and he was held responsible therefor, the goods were consigned to Rearick, and he alone had authority to obtain them from the railroad company. Rearick is a citizen of the United States and of the state of Pennsylvania, and is a general agent, on a fixed salary, of the Citizens' Wholesale Supply Company. He had under his charge the agents of said company, located in a certain portion of the state of Pennsylvania, including the borough of Sunbury. It was his duty,

among other things, to make delivery of goods, shipped by his principal, said company, into his district, to fill orders previously taken by other agents. Rearick went to Sunbury, on April 14, 1902, to deliver the goods, the orders for which had been taken by Kunkle; he received the car and with the assistance of Kunkle delivered the goods to the purchasers at their residences in the following manner: " The boxes marked for persons living in a selected locality were taken from the car and placed in a wagon. Kunkle and Rearick then took the wagon with the goods to a selected locality and stopped at the houses of the respective purchasers. At the house of each purchaser they took from the wagon such boxes as were marked for such purchaser and delivered them to him and received from such purchaser payment therefor. This they did at the houses of all persons who had ordered goods." The money collected was by Rearick forwarded to his principals, at Columbus, Ohio. The above were the facts agreed upon with regard to delivery of the goods which had been packed in boxes, but the manner of delivering brooms was different; as to the latter the material facts agreed upon were as follows: On opening the car Rearick cut the twine that bound the brooms together in the bundles in which they had been shipped, and removed the paper in which the package had been wrapped. The brooms of which the package had been composed were separated, and one or more, according to the order, delivered, each purchaser receiving the broom that had been marked for him, as hereinbefore described. No broom nor box was delivered to any one but the person who had ordered it and for whom it was marked.

While the agreement upon the facts was thus specific as to the manner in which the goods were delivered, the terms of the original contract for the sale were equally free from doubt. The sale was by sample; the goods were " such as are usually sold by grocers; " the delivery was to be at the residence of the purchaser in Sunbury; and each purchaser had the right to examine the goods when delivered, and if the same were not equal to the sample shown by Kunkle at the time the order was taken could refuse to accept them. A copy of one of the orders which Kunkle had forwarded to his principals was attached to the agreement as to the facts, but the agreement does not state that these orders were signed by the pro-

posed purchasers, and the only inference to be drawn from the facts agreed upon touching that point is that Kunkle had indorsed the name and address of the purchaser upon each order. The agreement as to the facts would not warrant a finding that the contract was that the goods should be shipped from Columbus by the supply company to the purchaser, and if such had been the contract it was not performed according to its terms. These were contracts, made in Pennsylvania, to deliver goods at the residences of the purchasers in Pennsylvania. The contracts of sale were, judged by their provisions only, executory contracts relating to commerce within the state of Pennsylvania, and were subject to the laws of this state. The appellant's principal could have filled these contracts by tendering delivery of any goods of the kind and quality of the sample shown, obtained from sources within the state of Pennsylvania; whether the contemplated traffic should go outside the state or not was left to chance or extrinsic business considerations. The performance of the contracts was, therefore, not necessarily concerned with interstate commerce : Diamond Glue Company v. United States Glue Company, 187 U. S. 611 (23 Sup. Ct. Repr. 206). If the transaction ever came within the protection of the interstate commerce clause of the federal constitution, it was not because of the inherent covenants of the contract, but from the manner in which those covenants were executed.

The mere fact that this appellant was a citizen of Pennsylvania, while those with whom he dealt were also residents of this state, is not in this case material, nor is the fact that the principals of the appellant were citizens of Ohio of any weight in determining whether the transactions of the defendant involved only domestic commerce, to be controlled by the laws of Pennsylvania, or interstate commerce and within the protection of the powers of the national government. A citizen of Pennsylvania and a citizen of any other state are alike within the protection of the provisions of the constitution of the United States in bringing goods into the state for purposes of sale, or in consequence of a sale, in making contracts with relation thereto and carrying such contracts into effect : Schollenberger v. Pennsylvania, 171 U. S. 1 (18 Sup. Ct. Repr. 757) ; Stockard v. Morgan, 185 U. S. 27 (22 Sup. Ct. Repr. 576).

The rights of the defendant are to be determined from the covenants of the contract and what was done under them, and are in no wise dependent upon his place of residence or that of his principal.

That the power to regulate commerce between the states is exclusively vested in Congress cannot be questioned. A state has no right to tax people representing the owners of property outside of the state, for the privilege of soliciting orders within it, as agents for such owners, for property to be shipped to persons within the state: Robbins v. Shelby County Taxing District, 120 U. S. 489 (7 Sup. Ct Repr. 592); Stockard v. Morgan, 185 U. S. 27 (22 Sup. Ct. Repr. 576); Brennan v. Titusville, 153 U. S. 289 (14 Sup. Ct. Repr. 829). Such a contract necessarily involves interstate commerce, the goods are without the state, the contract requires that they shall be consigned to the purchaser, and delivered within the state. The purchaser could decline to accept performance in any other way. The agent who in good faith, on behalf of his principal, solicits and obtains such a contract for the importation of goods acts within the protection of the constitution of the United States and there is a question whether he could be rendered liable to a local tax or license charge, although his principal, with the acquiescence of the purchaser, should subsequently depart from the terms of the contract and perform by delivering goods procured from some source within the state. Upon the other hand where the contract is one which may be performed by procuring goods from any source, if the vendor procures his supply from without the state and delivers the goods to the purchasers in the original package of importation, those making the deliveries are in position to invoke the protection of the interstate commerce clause of the constitution of the United States.

The importer, whether he be a citizen of the state or not, may sell the goods in the original packages, free from state regulation: Leisy v. Hardin, 135 U. S. 100 (10 Sup. Ct. Repr. 681); Lyng v. Michigan, 135 U. S. 161 (10 Sup. Ct. Repr. 725); Schollenberger v. Pennsylvania, 171 U. S. 1 (18 Sup. Ct. Repr. 757). The power of the state over the goods imported commences when the importer has so acted upon the importation that it has become incorporated and mixed with

the mass of property in the state, which happens when the original package is no longer such in his hands : Brown v. Maryland, 25 U. S. 419; Leisy v. Hardin, 135 U. S. 100 (10 Sup. Ct. Repr. 681). When the importer has so acted upon the thing imported that it has lost its distinctive character as an import, and he undertakes to distribute the contents of the package to a large number of distinct purchasers, or the performance of a number of independent executory contracts of sale, made prior to the importation with different parties, such delivery is no longer interstate but has become domestic commerce, and is subject to state control, so long as that control is exercised in a manner which does not involve discrimination among dealers or the sources from which the goods come : May v. New Orleans, 178 U. S. 496 (20 Sup. Ct. Repr. 976); Austin v. Tennessee, 179 U. S. 343 (21 Sup. Ct. Repr. 132).

The appellant contends that the case of Caldwell v. North Carolina, 187 U. S. 622 (23 Sup. Ct. Repr. 229), decides that a delivery of goods in the manner adopted in this case is within the interstate commerce clause of the constitution. We cannot assent to this proposition. In that case the defendant was delivering pictures and frames in North Carolina in pursuance of contracts previously made by other agents of his principal, the Chicago Portrait Company, a corporation of the city of Chicago, Illinois. The opinion of Mr. Justice SHIRAS, speaking for the court, clearly indicates that under the provisions of the contract the Chicago corporation had undertaken to make and deliver the pictures and frames to the respective purchasers in Greensboro, North Carolina ; the pictures and frames were made in Chicago, in pursuance of the several contracts, and were shipped to Greensboro, consigned to the Chicago Portrait Company ; the defendant received from the carrier the various packages containing the pictures and frames, took them to a hotel in the city of Greensboro, opened the packages, placing each picture in the frame designed for it, and from this point delivered the pictures one at a time to the several purchasers. The defendant was convicted of violating a city ordinance requiring a license, the supreme court of North Carolina affirmed the judgment, and the supreme court of the United States reversed that decision. The contract in that case was for the making of specific articles, to be made in Illinois, and delivered

to the purchaser in North Carolina.    The party who contracts for a picture and a frame designed for it, or a piece of machinery of a peculiar design, to be made by a certain person or manufacturer in another state contracts for the skill of that particular artist or maker, and the tender of an article of the same general character, originating from any other source would not be a compliance with the terms of the contract. If the contract is to be performed according to its terms the article must be made in one state and sent into another. This necessarily involves interstate commerce. The pictures and frames were made in Chicago, presumably by the persons for whose skill the purchasers had contracted, and were delivered in Greensboro, North Carolina, in literal compliance with the contract. The question was whether the manner in which the delivery was made had taken the whole transaction out of the protection afforded by the federal constitution against local regulation of interstate commerce. Mr. Justice SHIRAS said, in speaking of the reasoning of the opinion of the supreme court of North Carolina : " It seems to proceed upon two propositions—first, that the pictures in question were not completed before they were brought to Greensboro ; and, second, that the articles were not shipped directly to the purchasers, but to an agent of the sender in Greensboro." And in discussing those propositions said : " That the frames and the pictures were in separate packages, if such was the case, was merely for convenience in packing and handling, and placing the pictures in their proper places (the language of the verdict) meant that each picture was placed in the frame designed for it. The selection of the frame was as much a part of the purchase and sale as the selection of the picture. Nor does the fact that the articles were not shipped separately and directly to each individual purchaser, but was sent to the agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It was only that the vendor used two instead of one agency in the delivery. It would seem evident that, if the vendor had sent the articles by express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to such taxation. The same could be said if the vendor, or by a personal agent, had carried

and delivered the goods to the purchaser. That the articles were sent as freight by rail and were received at the railroad station by an agent who delivered them to the respective purchasers, in nowise changes the character of the commerce as interstate. Transactions between manufacturing companies in one state, through agents, with citizens of another constitute a large part of interstate commerce; and for us to hold with the court below, that the same articles, if sent by rail directly to the purchaser, are free from state taxation, but if sent to an agent to deliver, are taxable through a license tax upon the agent, would evidently take a considerable portion of such traffic out of the salutary protection of the interstate commerce clause of the constitution." The points decided in that case were : (1) That in making deliveries, in performance of contracts necessarily involving interstate commerce, the vendor might make the delivery by himself, or by a personal agent, or through a carrier, or he might employ any or all of said agencies ; and (2) that the shipment of the picture and the frame designed for it in separate packages did not involve an introduction of the goods into Greensboro in an incomplete condition. It does not appear in the report of that case that goods intended to be delivered to different purchasers were imported in the same package. The several pictures and frames may have been in different packages, in which case each purchaser would receive the entire contents of two original packages. An importation of goods may be divided into any number of original packages and still be subject to national control; it is only when the contents of an original package is divided for the purpose of distribution that the goods become subject to local regulation. The removal of the outer covering does not necessarily change the character of the importation as an original package, a specific object may retain its identity, although the box or bag which has protected it during transportation has been removed. The vital element is the retention of the identity of the contents of the package, as a unit of importation : Commonwealth v. Leslie, 20 Pa. Superior Ct. 529.

The contention of the appellant that in this case the original packages of importation were the single brooms with tags tied to them which composed the packages of one dozen into which the brooms were made up for the purpose of shipping them

from the state of Ohio into Pennsylvania, cannot be sustained. The single brooms did not constitute the package in which the importation was actually made ; nor was there any evidence that in bona fide transactions carried on between the manufacturer and the wholesale dealer residing in different states one broom ordinarily, or ever, was shipped or carried as a package for purpose of importation. There is no necessity for extended citation of authority as to what constitutes an original package ; the whole question was fully discussed in Austin v. Tennessee, 179 U. S. 343 (21 Sup. Ct. Repr. 132). The brooms with which the defendant dealt were not delivered in original packages. The other goods, packed in boxes, under the facts agreed upon in this case were delivered in original packages ; the defendant does not seem to have delivered a part of the contents of any box, and no purchaser seems to have refused to accept any part of the goods which were so packed in boxes. We are of opinion that the facts agreed upon as to the delivery of the brooms rendered the transaction subject to state regulation.

The ordinance in question violates no right of the appellant guaranteed by the fourteenth amendment of the constitution of the United States. That a state may by statute, and a municipality by ordinance, under authority duly delegated, enact and ordain reasonable regulations with regard to peddling and canvassing for the sale of goods from house to house has been long and definitely settled : Emert v. Missouri, 156 U. S. 296 (15 Sup. Ct. Repr. 367). A state has power to provide for the security of the lives, health and comfort of persons and the protection of property, and impose taxes upon persons residing within the state or belonging to its population, and upon vocations and employments pursued therein, not directly connected with foreign or interstate commerce, but in making such internal regulations, a state cannot discriminate adversely to the persons or property of other states, and such regulations must be equal and uniform : Powell v. Pennsylvania, 127 U. S. 678 (8 Sup. Ct. Repr. 992) ; Otis v. Parker, 187 U. S. 606 (23 Sup. Ct. Repr. 168); Austin v. Tennessee, 179 U. S. 343 (21 Sup. Ct. Repr. 132). The ordinance in question applies equally and uniformly to all persons, without regard to their places of residence, or any other qualification. All who sell by canvassing and delivering from house to house, articles " not of their

own production or manufacture " are required to procure a license.    Manufacturers and producers are only excepted so long as their sales are confined to the articles produced by them. When such persons attempt to sell articles produced by others they must, under the provisions of this ordinance, procure a license.    The ordinance, therefore, requires all dealers, those who buy to sell again, to take out a license.    Those who make to sell, and sell only what they make, are not dealers and are not subject to the provisions of this ordinance.    This is the classification upon which the whole mercantile tax system of Pennsylvania is today founded; and such a classification has by the supreme court of the United States been held not to offend against the provisions of the fourteenth amendment: American Sugar Refining Company v. Louisiana, 179 U. S. 89 (21 Sup. Ct. Repr. 43).    The power of a state to classify for purposes of taxation, has been clearly recognized, and the government of the United States has consistently pursued the same policy. The classification adopted in this ordinance exempts producers from the taxation of the methods employed by them to put their products upon the market, which is precisely what was done under the Louisiana statute, passed upon in the case just cited.    The classification attempted in the Illinois statute, which was by the supreme court of the United States, in Connolly v. Union Sewer Pipe Company, 184 U. S. 540 (22 Sup. Ct. Repr. 431), held to be unconstitutional, did not involve an exercise of the taxing power but it attempted a classification which had no relation to the subject-matter of the statute and no connection with the reason for the legislation.

The judgment is affirmed.