## CHARLESTON.

PENNYWITT V. BLUE, STATE TAX COMMISSIONER.

Submitted March 17, 1914.    Decided March 24, 1914.

1. BROKERS—*License Tax—Interstate Business.*

A merchandise broker, residing and maintaining an office in this State, in which he keeps samples of merchandise for use in his business, but no goods for sale, representing only non-resident clients, negotiating no sales or other transactions between residents of·this State or of goods in this State at the time, and holding no license from this State as a.merchandise broker, voluntarily obtained, is not subject to the license tax imposed, by sec. 95 of chap. 32 of the Code, upon persons practicing the business of a merchandise broker. (p. 719).

2. SAME.

Properly construed, said section and section 2 of said chapter, requiring merchandise brokers to obtain licenses, do not apply to brokers doing an exclusive interstate business.    (p. 719).

3. COMMERCS—*License    Tax—Interstate    Business    of    Merchandise Broker.*

Such a brokerage business is an instrumentality of interstate commerce and a state tax thereon would be tantamount to a state tax upon interstate commerce or state regulation thereof which is forbidden by the commerce clause of the federal Constitution.    (p. 722).

Appeal from Circuit Court, Kanawha County.

Bill by R. R. Pennywitt against Fred O. Blue, State Tax Commissioner, and others.    From decree for defendants, plaintiff appeals.

*Reversed and Rendered.*

*C. Beverly Broun* and *Leroy Allebach,* for appellant.

*Fred O. Blue,* for appellees.

POFFENBARGER, JUDGE:

Pennywitt, doing a merchandise brokerage business exclusively between citizens and business firms in Charleston, W. Va., on the one hand, and on the other, with persons, firms and corporations, doing business in states other than West Virginia, and handling no business at all between residents of this State, known as intra-state business, filed his bill in the

Circuit Court of Kanawha County, to restrain the sheriff of said county and the State Tax Commissioner from demanding and forcing him to pay a state license tax for conducting such business; and the court, deeming his business taxable under the law requiring merchandise brokers to obtain licenses, dismissed his bill. He never voluntarily applied for and obtained such a license, but he did pay to the Tax Commissioner, under protest, the license taxes for three years, amounting in all to $150.00 and a claimed penalty of $35.00, making an aggregate of $185.00, which said depositary holds pending the decision of the question as to liability to the tax, raised by the bill.

The authorities relied upon by counsel for the appellees do not sustain their contention. The case falls exactly within the principle declared as follows, in *Stockhard* v. *Morgan,* 185 U. S. 27; "All the cases cited in the opinion of the court deny the right of a State to tax people representing owners of property outside the State for the privilege of soliciting orders within it, as agents of such owners, for property to be shipped to persons within the State." The application of *Ficklen* v. *Shelby County Taxing District,* 145 U. S. 1, as a precedent for the right here claimed by the State is utterly destroyed by the following observations of Mr. Justice Peckham in *Stockhard* v. *Morgan,* differentiating the two cases:

"From these extracts from the opinion it is seen that a material fact in the case was that Ficklen had taken out a general and unrestricted license to do business as a broker, and he was thereby authorized to do any and all kinds of commission business, and therefore became liable to pay the privilege tax exacted. Although Ficklen's principals happened in the year 1887 to be wholly non-residents, the fact might have been otherwise, as was stated by the Chief Justice, because his business was not confined to transactions for non-residents."

Proceeding to the case in hand and further distinguishing the two, he said:

"In this case the complainants did not represent or assume to represent any residents of the State of Tennessee, and each of the complainants represented only certain specific parties, firms or corporations, all of whom were non-residents of Tennessee. They did no business for a general public. We

attach no importance to the fact that in the Robbins case the individual taxed resided outside of the State. He was taxed by reason of his business or occupation while within it, and the tax was held to be a tax upon interstate commerce. Nor does the fact that the complainants acted for more than one person residing outside of the State affect the question. If while so acting and solicting orders within the State for the sale of property for one non-resident of the State, the person so soliciting was exempt from taxation on account of that business, because the tax would be upon interstate commerce, we do not see how he could become liable for such tax because he did business for more than one individual, firm or corporation, all being non-residents of the State of Tennessee. The fact that the State or the court may call the business of an individual, when employed by more than one person outside of the State, to sell their merchandise upon commission, a "brokerage business," gives no authority to the State to tax such a business as complainant's. The name does not alter the character of the transaction, nor prevent the tax thus laid from being a tax upon interstate commerce. As was said by Mr. Justice Bradley, in the Robbins case, supra, 'The mere calling the business of a drummer a privilege cannot make it so. Can the state legislature make it a Tennessee privilege to carry on the business of importing goods from foreign countries? If not, has it any better right to make it a state privilege to carry on interstate commerce?' It is still a carrying on of interstate commerce, whether the party is acting for one or more principals residing outside of the State and selling their goods through his procurement, acting for them as their agent.

"We cannot see that the Ficklen case rules the one before us. Although it is plain from the opinion of the Chief Justice that there was not the slightest intention of casting any doubt upon the correctness of the decisions in the Robbins and other cases above cited, it is subsequently stated in *Brennan* v. *Titusville,* 153 U. S. 289, that the case of Ficklen is no departure from the rule of decision so firmly established by the prior cases.' In speaking of the distinguishing features of the Ficklen case, Mr. Justice Brewer, in delivering the opinion of the court in *Brennen* v. *Titusville,* said (at page

307) : 'In other words, the tax imposed was for the privilege of doing a general commission business within the State, and whatever were the results pecuniarily to the licensees, or the manner in which they carried on business, the fact remained unchanged that the State had, for a stipulated price, granted them this privilege. It was thought by a majority of the court that to release them from the obligations of their bonds on account of the accidental results of the year's business was refining too much, and that the plaintiffs who sought the privilege of engaging in a general business should be bound by the contracts which they had made with the State therefor."

"Although it is said in the opinion of the state court herein that the thing taxed is the occupation of merchandise brokerage, and not the business of those employing the brokers, yet we have seen from the cases already cited that when the tax is applied to an individual within the State selling the goods of his principal who is a non-resident of the State, it is in effect a tax upon interstate commerce, and that fact is not in anywise altered by calling the tax one upon the occupation of the individual residing within the State while acting as agent of a non-resident principal. The tax remains one upon interstate commerce, under whatever name it may be designated."

"That such tax amounts to an invasion of the commerce clause of the Constitution of the United States is held in *Stradford* v. *City Council of Montgomery,* 110 Alabama, 619, in a most satisfactory opinion by Chief Justice Brickell. In speaking of the tax under the Alabama statute, he said (p. 628) : 'While, as we have shown, the business of the defendant was general, so as to constitute him a broker, it by no means follows that it required he should also take local business. He might, as he did, confine himself to the interstate business and still be a 'broker' without becoming liable to the tax.' The statute of Alabama is similar to the one in Tennessee, and the facts in the above case are almost identical with those agreed upon herein."

"Although the State has general power to tax individuals and property within its jurisdiction, yet it has no power to tax interstate commerce, even in the person of a resident of the State."

Here, as in the case of *Stockard* v. *Morgan,* the bill sets

forth the broker's list of non-resident clients, giving their addresses, avers they are all non-residents, denies that he represents, any resident clients as sellers, shows all the merchandise of which, as agent, he offers sales, is outside of the State, and avers every transaction in which he participates is one between a resident of this state and a resident of some other state. He keeps no goods for sale and has no store or warehouse. His place of business is a mere office in which he keeps samples of the articles held outside of the state and sold through his efforts, as a broker or agent for his clients. In no respect, therefore, can his case be differentiated from that of *Stockard* v. *Morgan*, reiterating and affirming the early doctrine of *Brown* v. *Maryland*, 12 Wheat. 419, and expressly denying any departure from it and disavowing intention to deviate therefrom.

The elements or characteristics of a brokerage business, set forth in the answer and the proof taken in support thereof, distinguishing it from that of an agency, special, general or exclusive, and disclosing its tendency to create competition between the broker's own clients and its failure to fix, determine or maintain prices of the commodities represented, do not alter the case; for it cannot be supposed the highest court in the land overlooked or failed to appreciate them or their effect, in the well considered decisions to which reference is here made. It is not the relation the parties sustain towards one another or the peculiar results flowing from their joint operation that withdraws their business from the power of state taxation. Nor is it the mere taxation of interstate commerce by the states that is prohibited by the commerce clause of the federal Constitution. It forbids state regulation thereof in any way, except to a very limited extent and under peculiar conditions. A state tax upon such commerce is forbidden, not because it is a tax, but because it is a regulation thereof in the form of a burden thereon. As long as the broker confines his operations exclusively to interstate transactions, his business is an instrumentality of interstate commerce and not subject to state regulation or interference without the permission of the federal Congress, and a tax levied thereon is a tax upon interstate commerce, because a tax upon one of its instrumentalities, whatever its direct and

immediate effect upon the prices of the articles involved may be. The power to tax an instrumentality of interstate commerce includes power to destroy that instrumentality. To destroy it is to cut off one of the means of effecting or facilitating interstate commercial transactions. An interstate dealer is entitled to the use of all legitimate means and agencies for the facilitation of his business. The availability of agents does not preclude his right to make use of brokers, nor can the one class be denied him because he has the other. Any state burden of any kind upon interstate commerce, unless incident in some way to the exercise of the state police power or authorized, by Congress, is unconstitutional and void. *Hall* v. *DeCuir,* 95 U. S. 485; *Bowman* v. *Railroad Co.,* 125 U. S. 465; *Express Co.* v. *Iowa,* 196 U. S. 58; *Vance* v. *Vandercook,* 170 U. S. 438.

In view of these conclusions, the legislature cannot be deemed to have intended to subject brokers engaged exclusively in interstate transactions to the license tax imposed by sec. 95 of chap. 32 of the Code. The general terms of that section must be so far restrained as to avoid conflict between it and the federal constitution, upon the presumption against intent to violate it. *Conley* v. *Coal and Coke Ry. Co.,* 67 W. Va. 129; *Typewriter Co.* v. *Piggott,* 60 W. Va. 532.

For these reasons, the decree complained of will be reversed and a decree entered here enjoining the defendants from enforcing the provisions of said statute against the complainant in respect to his said business so long as he confines it exclusively to interstate transactions.

*Reversed and Entered.*