# GOAR v. LARIBE et al.—183 S. W. (2d) 774.

Middle Section.   July 22, 1944.

Petition for Certiorari denied by Supreme Court, December 2, 1944.

Andrew Ewing and W. P. Cooper, both of Nashville, for appellant.

Farmer, Denney & Leftwich, of Nashville, for appellee.

HOWELL, J. In this cause the complainant Frank Goar seeks a judgment against the defendant Jack Laribe for services rendered the defendant under a verbal contract to assist him in raising funds to finance the manufacturing and distributing of an improvement in the construction of a road scraper patented by a man named Daniels, the rights to which belonged to the defendant. The complainant insists that he performed the service by influencing the members of the firm of the Oman Construction Company of Nashville to become interested to such an extent that they at first contributed $15,000 to the project, and later organized, with the defendant Laribe, the Winston Manufacturing Company, a corporation, for the purpose of manufacturing, selling and distributing this improved road scraping device. The complainant insists that he is entitled to ten per cent of such sums as were loaned, advanced, invested or otherwise procured from the Omans by Laribe in connection with the matter. The bill prays among other things that

complainant be given a judgment against the defendant Laribe for whatever amount may be found to be due him.

The Omans and the Winston Manufacturing Company were made defendants and demurred to the bill. Their demurrers were sustained by the Chancellor and the bill dismissed as to them.

The defendant Laribe filed a plea and answer. The plea raised the question that the complainant was not entitled to recover because his suit was brought as a broker and he had not paid a license as such under the provisions of Chapter 108, Article 2, Section 1, Public Acts of 1937, Chapter 192, Section 20, Acts of 1937, Chapter 21, Sections 23 and 32, Acts of 1939 and Code of Tennessee, Section 1248.24. The answer denied the material allegations of fact in the bill, denied that the defendant had any agreement or contract with the complainant and that complainant had rendered any service or was entitled to recover anything. The bill was later amended and John Oman III made a party defendant as Secretary and Treasurer of the Winston Manufacturing Company. A demurrer of John Oman III was sustained and the bill dismissed as to him.

Upon the hearing the Chancellor found the facts in favor of the complainant and gave him a judgment against the defendant Laribe for $1,500 with interest from the date of the filing of the bill, January 26, 1942, and all costs not otherwise taxed.

The defendant Jack Laribe by proper procedure has perfected an appeal to this Court and has assigned errors which raise the two questions whether or not the Chancellor erred in not sustaining the pleas of the defendant that complainant could not recover because he had not paid a broker's license and in finding that under the evidence the complainant was entitled to recover a judgment.

■ The Code Section relied upon by the defendant in his plea provides for the payment of a license fee or privilege tax by Brokers or Security Dealers, engaged in soliciting or accepting orders or contracts or consummating deals for either the purchase or sale of any stocks, bonds or other securities. Code of Tennessee, Section 1248.24(b). We do not find any Code Section which imposes a privilege tax upon a person engaged as the complainant was in his activities toward interesting the Omans in the project of this defendant as shown by this record. It does not appear that complainant was engaged in the business of finding people ready, willing and able to advance money to assist others in ventures of various kinds except in connection with this particular matter and if he was, we find no Code Section taxing such activities. We see no error in the action of the Chancellor in overruling the plea of the defendant.

■ We have carefully read and reread the entire record and examined the exhibits and are constrained to concur with the Chancellor in his findings of fact, which are as follows:

"The Court further finds from the record, that the complainant and defendant entered into a verbal agreement, whereby the complainant was to introduce the defendant to parties in the Nashville community, and assist him in getting said parties financially interested in the manufacturing and marketing of an improved patent road scraper, in which the defendant had manufacturing rights, and for complainant's services the defendant was to pay him 10% of the capital secured from said parties in the promotion of the enterprise.

"While the defendant testified that he never reached any specific agreement with the complainant, he testified that there was an understanding between them as the

result of their 1940 November conference as to a plan of financing the venture. The plan was that in order to expedite the sale of stock in a corporation to be formed, the complainant was to undertake to get some contractor to recommend or approve the machine, and in consideration for such recommendation the contractor was to receive a certain amount of stock in said corporation.

"The record fails to support this testimony of the defendant. He testified that the plan above outlined was agreed upon in the 1940 November conference, but a letter .from him to the complainant dated December 16, 1940, written from Little Rock, Arkansas, contains the following paragraph:

" 'After leaving you in Nashville last week the thought occurred to me that we might work a deal with "Blair", using a plan whereby "Blair" received a stock for labor and steel, to satisfy you of the merits of the machine, and work out stock promotion from that point, however, in view of Oman's increased interest we may wait a while and see the outcome.'

"In a letter from the complainant to the defendant dated December 11, 1940, in which the complainant was relating the results of a demonstration of a model scraper to the Omans, who were responsible and reputable contractors of Nashville, in an effort to interest them in the venture, it is stated:

" 'There is no denying his interest in the thing, and I still think we are on the best track, for he can put up whatever it takes.'

"Had the understanding been as related by the defendant, the letters above quoted from, would not have been worded as they were.

"It is not controverted that within a day or so after the November meeting, the defendant left Nashville, and

Goar immediately busied himself in trying to interest reputable contractors in Laribe's improved scraper. He went to see the Omans and had several conversations with them. Upon Laribe's return to Nashville, Goar introduced him to the Omans. After this introduction, Laribe again left the city, and Goar continued his efforts with the Omans. In the latter part of January or the first of February, 1941, Laribe returned to Nashville, and he and Goar again called on the Omans.

"Within a week or so after this visit, Laribe, in the absence of Goar, met with the Omans and came to an agreement, which agreement was embodied in a written contract and resulted in the Omans eventually putting up $15,000.00 for the purpose of manufacturing sample scrapers to test out the merits of the improved model.

"The above related facts substantiate the complainant's testimony as to his agreement with the defendant. The services rendered by complainant Goar, and his introduction of Laribe to the Omans, unquestionably were contributing factors in the reaching of the agreement be-tween the latter parties.

"The capital investment made by the Omans as a result of this agreement, amounted to $15,000.00."

This complainant brought the defendant and the Omans together and afterwards the defendant entered into an agreement with the Omans by which they contributed many dollars to the enterprise. It is not shown that defendant did, could have or would have ever interested the Omans had it not been for the activity of complainant. He was the agency through which the connection between the defendant and the Omans was established.

The rule is well stated in 9 Corpus Juris, page 619, Sec. 99, as follows:

"After a broker has found a customer and commenced negotiations, neither the principal nor the customer can break them off and defeat the broker's right to a commission by concluding the transaction without his aid. Nor can a principal reject an offer made by a person found by a broker and then without the broker's intervention sell to the same person and thus defeat the broker's right to a commission. A broker is entitled to a commission for effecting a sale, although he takes no part in the negotiations, where the sale is effected as the result of his introducing the customer and the principal or of his putting them into communication; the principal cannot defeat the right to compensation by closing the transaction directly with the customer without the broker's further aid." See also 12 C. J. S., Brokers, Sec. 93.

This is quoted with approval in Gilbert v. Smith, 14 Tenn. App. 500, 507, and in Sylvester v. Johnson, 110 Tenn. 392, 75 S. W. 923.

We find no error in the action of the Chancellor. The assignments of error are overruled and the decree of the Chancellor is affirmed.

A decree will be entered here giving the complainant, Frank Goar, a judgment against the defendant Jack Laribe and the surety on his appeal bond, for the sum of $1,500, together with interest from January 26, 1942, the date of the filing of the bill and all the costs.

Affirmed.

Felts and Hickerson, JJ., concur.