TYGART *v.* FRAZER *et al.*

*(Jackson,* April Term, 1951.)

Opinion filed February 9, 1952.

COSTEN, CRABTREE & COSTEN, of Memphis, for appellants.

W. WRIGHT MITCHELL, of Memphis, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case involves the right to a broker's commission upon the sale of "cotton dusters" to Stratton-Warren Hardware Company. We will refer to the parties as they appeared in the trial court, the complainants being George P. Frazer and one Purcell, and the defendants, J. D. Tygart doing business as New Ideal Sprayer Company, and Stratton-Warren Hardware Company, the latter being a defendant solely as "garnishee", who was indebted to its codefendant, Tygart, in a sum in excess of the total amount of commissions claimed to be due. It was agreed by the parties that the Stratton-Warren Company should retain in its possession $3,000 to satisfy the decree of the court.

The Chancellor found the facts in favor of the complainants and entered a decree accordingly. The cause was appealed to the Court of Appeals and that court concurred in the Chancellor's finding and affirmed the decree.

We granted certiorari to review the defendants' contention (1) that there was no valid contract upon which to base a judgment or decree, and (2) that the complainants had not paid the privilege tax for exercising the right to engage in business as a broker under Code, Section 1248.28(c). The oral argument of counsel clarified these questions to a large extent.

The contention is made in the formal assignments of error (1) "that the undisputed proof shows that the contract of employment expressly prohibited sales to jobbers, such as Stratton-Warren Hardware Company"; (2) that the privilege tax was not paid; and (3) that it was error not to require complainants to execute an attachment bond as required by Code, Section 9418.

The oral contract of employment shows that the complainant was to have the exclusive agency to represent the defendant in the States of Tennessee, Arkansas and Mississippi in the sale of the "Tygart Duster" to dealers, for which he was to receive a commission of ten percent. The cotton duster herein mentioned is an attachment to put on a tractor to spray or spread a poison to kill the boll weevil.

The following finding of facts by the Court of Appeals is supported by the record and is binding upon this Court: "It was agreed that neither the New Ideal Sprayer Company, nor the complainants, would sell any cotton dusters to anyone other than dealers;" * * * "It was agreed that neither New Ideal Sprayer Company nor the complainants would sell to jobbers; that is, to parties or concerns that sell to retail dealers only."

While defendant contends there is no evidence to sustain the above finding, we must disagree. Defendant contends that the evidence only shows "that complainants *expressed the hope* that the contract would be modified

to permit the sale to jobbers." But the Chancellor and Court of Appeals, after giving full consideration to all the evidence, were justified in the finding to which we have referred. We will not cite the evidence in detail and give our analysis of it.

Continuing the Court of Appeals says:

"Shortly after the contract was made, the complainants were of the opinion that it would be to the advantage of both parties, and that more money would be made by both, if they were permitted to sell the cotton dusters to jobbers, and so wrote Mr. Tygart. They also talked to him over the telephone, and Mr. Tygart told them he would consider the matter and call them back.

"In June, 1950, the complainant Frazer was in contact with Mr. Ballard, a buyer for Stratton-Warren Hardware Company, and was informed that the company wanted to buy cotton dusters. Frazer caller Mr. Tygart over the telephone and insisted that he allow the complainants to sell to jobbers; that the complainants had Stratton-Warren lined up; that their present factory was out of business, and insisted that he allow the complainants to sell them; that if he would permit them to sell to this jobber, they would reduce their commission from ten to five per cent. Mr. Tygart replied: 'I will tell you what I will do. I will consider it and call you back and let you know.' Mr. Tygart did not call back.

"Immediately he had his manager, Mr. Rolland, to call Mr. Ballard at Stratton-Warren in Memphis and made an appointment to see Mr. Ballard the next day about selling Stratton-Warren cotton dusters.

"Mr. Tygart, without informing the complainants either before or after the transaction, went to Memphis and sold to Stratton-Warren 469 cotton dusters at the price of $42,220.00.

"Several days thereafter the complainants learned of this sale; thereupon Frazer called Tygart and was informed that no commission would be paid the complainants."

We think it was as much a part of the contract that the defendant manufacturer "should not sell to jobbers" as that complainants should not sell to them. In thus violating the contract the defendant placed a competitor in the field against the complainant, who, under the contract *was given the "exclusive agency."*

Counsel for the defendant relies upon the case of *Sackett* v. *Ford*, 1 Tenn. App. 506. But we agree with the Court of Appeals that it does not control our decision in the case at bar.

The proof shows beyond any question of doubt that the complainant, George P. Frazer, had been actively engaged in selling "cotton dusters" under his contract with the defendant; he had made a number of such sales to *dealers*. The contract was mutually beneficial. The complainant was anxious to make it of even greater benefit to both himself and his employer. He had gone to the trouble, and possibly some expense, in "lining up" a purchaser who was admittedly a "jobber", to wit, Stratton-Warren Hardware Company. While the defendant had agreed not to sell his product to "jobbers" it is shown that he contacted Stratton-Warren Hardware Company *immediately* (the next day) and closed a sale which was in excess of forty thousand dollars.

If we concede the truth of the defendant's contention that the contract expressly prohibited the complainant from selling to "jobbers" this, when considered in the light of defendant's breach of the contract, is not a defense to complainant's lawful claim to compensation. The defendant will not be permitted to thus unjustly

enrich himself by his own variation of the contract at the expense of his employee.

The defendant by his act of selling to this "jobber" was by indirection, limiting the complainant's opportunity to make sales to *dealers*. We think that under the well considered principles of equity he should not be permitted to "reap where he has not sown" and more especially where his reaping works a positive injury to the complainant.

The question is controlled by the same principle that is applied in sales by Real Estate Brokers where the owner of land seeks to defeat the agent of his commission by himself entering into a contract with a purchaser. Our cases hold without exception, "If a broker is employed to sell property, and he first brings the property to the notice of the purchaser, and upon such notice the sale is effected by the owner, the broker is entitled to his commission." *Royster* v. *Mageveney*, 77 Tenn. 148; *Sylvester* v. *Johnson*, 110 Tenn. 392, 75 S. W. 923; *Goar* v. *Laribe*, 27 Tenn. App. 618, 183 S. W. (2d) 774. In the latter case it is held: "After a broker has found a customer and commenced negotiations, neither principal nor customer can break them off and defeat broker's right to compensation by concluding the transaction without his aid."

The first assignment of error is overruled.

We find no merit in the second assignment of error complaining that the plaintiff had not paid a privilege tax authorizing him to transact business as a broker. Code, Section 1248.28. We think the Court of Appeals effectively disposed of this assignment, as follows:

"Under the evidence, this transaction was interstate and not intrastate. This order for the cotton dusters was

given by Stratton-Warren, a jobber in Tennessee, and the goods were to be and were shipped from the defendant's factory in Nashville, Georgia.

"This code section does not, and, of course could not, impose a tax upon such an interstate transaction. 'A privilege tax imposed by a state statute upon residents of that state as merchandise brokers whose business is exclusively confined to soliciting orders from jobbers and wholesale dealers within the state, as agents for non-resident parties, firms or corporations, for goods to be shipped by such non-resident principals to such jobbers or dealers, is an unconstitutional invasion of the commerce clause of the Constitution of the United States.' *Stockard* v. *Morgan*, 185 U. S. 27, 22 S. Ct. 576, 46 L. Ed. 785.''

In response to the third assignment the parties agreed that the garnishee hold in its possession $3,000 out of any funds that might be due the defendant. It was not error therefore for the court to permit Purcell to become a party by executing a cost bond. There was no necessity for another attachment.

All assignments of error are overruled, and the Court of Appeals is affirmed.